## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| **Joseph Drenth, and the** | : |
| **National Federation of the** | : |
| **Blind of Pennsylvania,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : |
| | : |
| **Kathy Boockvar,** | : |
| **Secretary of the Commonwealth,** | : |
| **in her official capacity, and the** | : |
| **Department of State of the** | : |
| **Commonwealth of Pennsylvania,** | : |
| | : |
| **Defendants.** | : |
| | : |

---

## COMPLAINT

## INTRODUCTION

1.     Joseph Drenth and the National Federation of the Blind of

Pennsylvania ("NFB-PA") (collectively "Plaintiffs"), bring this action against

Defendant Kathy Boockvar, in her official capacity as Secretary of the

Commonwealth of Pennsylvania, and the Department of State of the

Commonwealth of Pennsylvania, under Title II of the Americans with Disabilities

Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the

Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.* Plaintiffs seek

to vindicate the right of individuals with disabilities to vote privately and independently by absentee or mail-in ballot in the June 2, 2020 primary election and in future elections. Plaintiffs have been denied that right in violation of federal laws. On the basis of these violations, Plaintiffs seek a temporary restraining order, preliminary and permanent injunctive relief, a declaratory judgment, attorneys' fees and costs, and any other available relief.

2.      The once-in-a-century impact of the COVID-19 pandemic has indelibly changed Pennsylvania. For example, for the upcoming June 2, 2020 primary election, most Pennsylvanians will choose to safely vote via absentee or mail-in ballot instead of going to the polls, where they risk their health.

3.      But this safer, vote-at-home option is not available to blind[1] Pennsylvanians, because the Commonwealth's absentee and mail-in ballots are inaccessible to the blind.

4.      The inaccessible absentee and mail-in ballot system in Pennsylvania is part of a long history of discriminatory barriers—from inaccessible transportation, to inaccessible polling places, to inaccessible voting machines—that people with disabilities have had to endure.

---

[1] For semantic convenience throughout this Complaint, the term "blind" is used in its broadest sense to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access print.

5.      As a consequence, their voter turnout has been lower than turnout among voters without disabilities.[2] However, this does not reflect a lack of interest in voting. Voter turnout has increased substantially across the country in recent years, as states reduce barriers to voting for the disabled.

6.      But Pennsylvania's reliance on exclusively paper ballots keeps blind Pennsylvanians from participating in absentee and mail-in voting.

7.      Defendants' absentee and mail-in ballot system places Plaintiffs in an impossible bind. Plaintiffs must either: a) forfeit their right to vote privately and independently—and in some instances, forfeit their right to vote at all, or b) risk their health and the health of their loved ones by traveling to a polling place in order to cast their vote in person.

8.      Because individuals without disabilities may cast their votes by absentee or mail-in ballot privately and independently, the ADA and Section 504 require Defendants to provide individuals with disabilities—including Plaintiffs— an equal opportunity to do the same.

9.      Ultimately, Pennsylvania must implement a permanent solution, one that makes available an accessible online ballot tool so that blind voters have equal

---

[2] L. Schur & D. Kruse, *Fact Sheet: Disability and Voter Turnout in the 2018 Elections*, Rutgers School of Management & Labor Relations 5 (May 18, 2020), https://smlr.rutgers.edu/sites/default/files/2018disabilityturnout.pdf.

access to vote independently and privately in all elections through absentee and mail-in voting.

10.     Defendants may not be able to implement that permanent solution in the days before the June 2, 2020 primary. At the least, however, Defendants have ample time to implement an interim solution that would help to make absentee and mail-in ballots more accessible in time for the June 2, 2020 primary election. Plaintiffs demand such an interim solution.

11.     A temporary, quick, and easy solution is making Pennsylvania's military absentee ballot (i.e., the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") absentee ballot) accessible and available to blind and low-vision Pennsylvanians in time for the June 2, 2020 primary.

12.     When Michigan faced a similar inaccessible ballot problem earlier this month, a federal judge approved the same UOCAVA solution Plaintiffs proposed here. The judge entered a stipulated order approving this interim solution on May 1, 2020—a mere four days before the May 5, 2020 election in that state.

13.     As a more permanent fix, Michigan has agreed to purchase a remote accessible vote-by-mail system in time for its August 2020 elections, and to continue to use this system in future elections.

14.     The same types of immediate and permanent relief can be replicated

in Pennsylvania so that the blind are able to vote at home like everyone else.[3]

15.     By refusing to make absentee and mail-in ballots accessible,
Defendants have treated Plaintiffs like second-class citizens; ignored their basic
rights to security, equality, and dignity; and unlawfully undermined their
fundamental right to vote.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to
28 U.S.C. §§ 1331 and 1343, because Plaintiffs' claims arise under the ADA and
Section 504. In addition, the Court has jurisdiction over Plaintiffs' claims for
declaratory relief pursuant to 28 U.S.C. §§ 2201–02.

17.     Venue is proper in the Middle District of Pennsylvania pursuant to 28
U.S.C. § 1391(b)(1) because Defendants reside in this district.

## PARTIES

18.     Plaintiff Joseph Drenth is a blind individual who is registered to vote
in Pennsylvania. Mr. Drenth is the current first vice-president of the National
Federation of the Blind of Pennsylvania; he also is a member of the Pennsylvania
State Board of Vocational Rehabilitation and a senior Software Engineer for JBT
Corporation. He resides in Chalfont, Pennsylvania and is a regular voter who

---

[3] Plaintiffs also seek declaratory relief stating that Defendants' conduct violates
the ADA and Section 504.

would like to vote in the June 2, 2020 primary election.

19.     Plaintiff NFB-PA is the Pennsylvania affiliate of the National Federation of the Blind. NFB-PA is a 501(c)(3) non-profit corporation comprised of blind Pennsylvanians and their families and friends. The organization promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and community life, transportation, and recreation. NFB-PA's goal of complete integration of the blind into society on a basis of equality includes removal of legal, economic, and social discrimination. NFB-PA advances its members' right to participate fully and equally in all aspects of their lives, including by ensuring its blind members can vote on equal footing with every other Pennsylvanian. Among other efforts, NFB-PA has worked to ensure the blind have an equal opportunity to vote on the same terms as other voters by collaborating with developers of voting technology to ensure accessibility for the blind.

20.     NFB-PA has many blind members, including Mr. Drenth, who are registered to vote in Pennsylvania and wish to vote in upcoming elections, including the June 2, 2020 primary election, by casting an absentee or mail-in ballot privately and independently. NFB-PA brings this lawsuit on behalf of itself

and on behalf of its constituents.

21.     Defendant Boockvar is the Secretary of the Commonwealth and, in
that position, leads the Department of State; she is sued in her official capacity
only. Defendant Boockvar supervises and administers Pennsylvania's elections and
election law.

22.     Defendant Department of State of the Commonwealth of
Pennsylvania is the agency that administers Pennsylvania's election scheme.

## FACTUAL ALLEGATIONS

### COVID-19's Effect on Pennsylvania's June 2, 2020 Primary Election

23.     Nationwide, as of May 19, 2020, there have been 1,504,830 total
cases of COVID-19, and 90,340 deaths.[4] In Pennsylvania, as of May 19, 2020,
there have been 63,666 total cases of COVID-19 and 4,624 deaths.[5]

24.     Adults with disabilities are three times more likely than adults without
disabilities to have the serious underlying medical conditions which place them at

---

[4]  Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Cases in the U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[5]  Pennsylvania Department of Health, COVID-19 Data for Pennsylvania, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx.

a higher risk of severe illness from COVID-19.[6]

25.     Because voters often must crowd together to vote in polling places,

polling places are ideal environments to further the spread of the COVID-19 virus.

The Centers for Disease Control ("CDC") has encouraged people to use an

absentee or mail-in ballot rather than traveling to polling places on election day.[7]

26.     Technology is readily available that would afford Plaintiffs, and other

voters who are blind, the opportunity to cast their votes through absentee or mail-in

ballots privately and independently—as sighted individuals may do. But

Defendants have refused to make this technology available to Plaintiffs.

27.     The need for immediate implementation of accessible absentee and

mail-in ballots is urgent in light of the ongoing COVID-19 global pandemic.

28.     Because of the COVID-19 pandemic, Governor Thomas Wolf

extended COVID-19-related restrictions until June 4, 2020—two days after the

primary election—and Defendants are encouraging voters to cast absentee or mail-

---

[6] *See* Centers for Disease Control and Prevention, People Who Need Extra Precautions: People with Disabilities, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html.

[7] *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Recommendations for Election Polling Locations, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html.

in ballots rather than travel to polling locations.[8]

29.     Many Pennsylvanians are expected to vote by absentee or mail-in ballot in the upcoming June 2, 2020 primary election. As of May 10, 2020, Pennsylvanians had submitted 1,209,289 applications for absentee and mail-in ballots for the June 2, 2020 primary election. By comparison, the 2018 primary election generated 1,563,373 votes for *all* ballots.

30.     The dangers posed by in-person voting are real. Wisconsin officials reported that at least 40 people may have contracted COVID-19 due to in-person participation in that state's April 7, 2020 primary election.[9]

31.     With respect to the upcoming June 2, 2020 primary election in Pennsylvania, the danger is heightened because many polling places will be closed, in part due to staffing shortages, resulting in longer lines and denser crowds at the few polling locations that will be open.

32.     Under Act 12 of 2020, signed by Governor Wolf on March 27, 2020, counties may consolidate polling locations for the June 2, 2020 primary due to

---

[8] *See* Press Release, Secretary of State Reminds Voters of New Mail-in Voting Options Amid Coronavirus Concerns (March 12, 2020), https://www.media.pa.gov/Pages/State-Details.aspx?newsid=374.

[9] Teran Powel, "40 Coronavirus Cases In Milwaukee County Linked To Wisconsin Election, Health Official Says," WUWM 89.7 (Apr. 24, 2020), https://www.wuwm.com/post/40-coronavirus-cases-milwaukee-county-linked-wisconsin-election-health-official-says#stream/0.

COVID-19. Act 12 permits a 60 percent reduction of polling places in a county, and counties may apply for further reductions.[10]

33.    Consolidation is expected across the Commonwealth. For example, Luzerne County, which is in the Middle District of Pennsylvania, intends to reduce the number of available polling locations from 144 to 58.[11]

34.    At the polling places that remain open, it will be more difficult for blind individuals, including Plaintiffs, to ensure they remain six feet apart from other individuals, as is recommended by the CDC in order to stem the spread of COVID-19—especially if such individuals need assistance to cast their ballot.

35.    The journey to a polling place also is more hazardous for blind individuals, including Plaintiffs, than it is for sighted individuals. Because blind individuals cannot drive, they disproportionately rely on public transportation services, which necessarily brings them into close proximity with others.

36.    Because fewer polling locations will be available for the June 2, 2020 primary election, blind individuals, including Plaintiffs, also may have to travel

---

[10] Department of State, Election Operations During COVID-19 (April 28, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS _ElectionOperationsDuringCOVID19.pdf.

[11] Jennifer Learn-Andes, "What will Luzerne County voting be like on June 2?" Times Leader (May 6, 2020), www.timesleader.com/top-stories/782680/what-will-luzerne-county-voting-be-like-on-june-2.

farther in order to get to a polling place—which may further exacerbate the
dangers posed by the journey.[12]

**Plaintiff Joseph Drenth**

37.     Mr. Drenth lives in Chalfont, Pennsylvania, with his wife, mother-in-
law, and stepson. Mr. Drenth has been legally blind for decades. His wife, mother-
in-law, and stepson also are blind, to varying degrees.

38.     Mr. Drenth is a registered voter who has regularly voted in past
elections held in the Commonwealth. For those past elections, he always went to
his local polling place in order to cast his vote in-person.

39.     Because of the COVID-19 pandemic, for the first time ever, Mr.
Drenth does not feel safe going to his local polling place in order to vote, and he
does not intend to go to his polling place on June 2, 2020 for the primary election.

40.     Mr. Drenth is concerned about the cleanliness of his polling place. He
is uncertain as to whether other individuals at the polling place will wear gloves or
face masks in order to help prevent the spread of the COVID-19 virus. If he were
to go to a polling place, he could not determine on his own whether the people

---

[12] *See* Department of State, Election Operations During COVID-19 (April 28,
2020) (county boards of elections "may temporarily assign voters from a given
election district . . . to another polling location located outside of the voters'
geographical precinct, for the purpose of casting a ballot in-person on June 2,
2020."),
https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS
_ElectionOperationsDuringCOVID19.pdf.

surrounding him were maintaining adequate "social distancing."

41.     In light of these risks to his health, Mr. Drenth would rather not vote than travel to a polling place on June 2, 2020.

42.     Mr. Drenth is particularly concerned about COVID-19 because his wife and mother-in-law have asthma, which may make them particularly vulnerable should they contract the virus. Mr. Drenth also is taking medications that compromise his immune system—putting him at increased risk as well.

43.     Voting independently and privately is important to Mr. Drenth. He already has applied for a mail-in ballot so that he can exercise his right to vote in the upcoming June 2, 2020 primary election.

44.     Mr. Drenth is unable to vote independently and privately using a mail-in ballot, because Defendants have not made it accessible to blind voters.

**The Absentee and Mail-in Ballot Process in Pennsylvania**

45.     Pursuant to Act 77 of 2019, which Governor Wolf signed into law on October 31, 2019, all Pennsylvania voters may vote from their home (rather than at a polling place) in any primary or election held in the Commonwealth, either

through an absentee ballot or a mail-in ballot.[13]

46.     In order to receive an absentee or mail-in ballot, a voter must apply to

the county board of elections in which his or her voting residence is located.[14]

47.     Pennsylvanians may apply for an absentee ballot or a mail-in ballot

either by applying online or by placing a paper application in the mail, as follows:

> A. Voters may use the online application process if they have a
> Pennsylvania driver's license or a non-driver photo identification
> from the Pennsylvania Department of Transportation
> ("PennDOT").
>
> B. Voters who do not have a Pennsylvania driver's license or a
> PennDOT identification may obtain a paper application, either by
> downloading and printing the application or by calling, emailing,
> or writing a letter to either the Department of State or their county
> board of elections and requesting delivery of a paper absentee
> ballot or mail-in ballot application in the mail.[15]

48.     The deadline for requesting an absentee ballot is May 26, 2020.

49.     If a timely application is approved, the county board of elections mails

---

[13] Absentee and mail-in ballots both enable voters to cast their ballots without traveling to a polling place on election day. The differences between these two options are immaterial for this lawsuit, because both absentee and mail-in ballots are inaccessible to blind voters. Defendants have violated Plaintiffs' rights under the ADA and Section 504 regardless of whether Plaintiffs qualify for an absentee ballot, a mail-in ballot, or both.

[14] *See, e.g.*, 25 Pa. Stat. Ann. § 3146.2(e).

[15] Theoretically, a voter also could visit a county election office and obtain an application. In light of the COVID-19 pandemic, many offices are closed.

a paper copy of the absentee or mail-in ballot to the voter.[16]

50.     The voter must fill out the absentee or mail-in ballot and mail it back to the county board of elections. It must be received by the county board of elections no later than June 2, 2020 at 8 p.m. to be counted.[17]

51.     For Pennsylvanians who currently reside in the Commonwealth and are not members of the military, there is no option for receiving, filling out, or submitting an absentee or mail-in ballot online. All absentee and mail-in ballots must be filled out by hand and placed in the mail.

52.     This process of voting by absentee or mail-in ballot is inaccessible to blind individuals. Once a voter receives the absentee or mail-in ballot in the mail, the voter must complete the following steps:

    A.  Locate the large, outer envelope sent to the voter's address, which contains the ballot, "secrecy" envelope, and "return" envelope;

    B.  Open the outer envelope and locate the ballot inside;

    C.  Read the ballot and fill it out by hand;

    D.  Place the completed ballot inside the "secrecy" envelope;

    E.  Seal the "secrecy" envelope and place it inside the "return" envelope;

    F.  Sign a declaration on the outside of the "return" envelope

---

[16]  *See* 25 Pa. Stat. Ann. §§ 3146.2a(a.3)(3), 3150.12b(a)(1).

[17]  *See* 25 Pa. Stat. Ann. §§ 3146.6, 3146.8(g)(1)(ii), 3150.16(c).

affirming that the voter is qualified to use the ballot;[18] and

G. Place the return envelope in the mail. [19]

**Pennsylvania's Absentee and Mail-In Ballot Process Is Inaccessible**

53.     Given the above-described voting process for absentee and mail-in

ballots, a sighted individual may vote independently and privately without having

to travel to a polling place on election day during the COVID-19 pandemic.

54.     By contrast, blind individuals cannot vote independently and privately

by absentee or mail-in ballot. The process of casting a vote through an absentee or

mail-in ballot is completely inaccessible.

55.     Blind individuals, including Plaintiffs, cannot read the printed text

that appears on the absentee ballot or complete the multi-step process described

above without assistance.

56.     Because Plaintiffs and other blind Pennsylvania voters must rely on

the assistance of another, they cannot vote privately and independently using

---

[18] The voter need not sign the declaration if the voter is unable to do so; in that scenario, a witness may sign the "return" envelope and affirm the voter was unable to sign his or her own name, and that the witness helped the voter complete his or her ballot. *See* 25 Pa. Stat. Ann. §§ 3146.6(a)(3), 3150.16(a.1).

[19] *See* Pennsylvania Balloting and Envelope Guidance, Pennsylvania Department of State 8–11, https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS _BallotingandEnvelope_CountyGuidance_v1.0.pdf; Pennsylvania Department of State Envelope Guide, https://www.dos.pa.gov/VotingElections/Documents/Envelope-Guide.pdf.

absentee or mail-in ballots.

57.     By forcing Plaintiffs and other blind individuals to seek out third-party assistance, the absentee and mail-in ballots jeopardize the safety of Plaintiffs and other blind individuals during the COVID-19 pandemic.

58.     And although Plaintiffs could choose to vote in person on June 2, 2020, doing so may put their health (or even their lives) at risk. Plaintiffs are entitled to equal access to an absentee or mail-in ballot to vote privately and independently, as sighted individuals can.

59.     Making Pennsylvania's UOCAVA absentee ballot available to all blind voters is one way to address this problem in time for the June 2, 2020 primary, even if it is only a temporary solution to this longstanding problem.

**A Temporary, Quick, and Easy Solution is to Make the UOCAVA Absentee Ballot Available to Blind Voters.**

60.     A separate absentee voting system applies for Pennsylvanians who are active members of the military and stationed overseas.

61.     Like non-military members living in the Commonwealth, military members stationed overseas may apply for absentee ballots online.[20]

62.     Unlike civilians living in the Commonwealth, however, military members stationed overseas also may receive their absentee ballot electronically,

---

[20] Military members stationed overseas may apply for an absentee ballot using the Federal Post Card Application or by other means.

including as a PDF attachment to an email sent to the voter.

63.     Under Pennsylvania's system, once the overseas military member marks his or her online ballot, that voter must mail a hard copy of the absentee ballot back to local election officials in the Commonwealth.

64.     Faced with a similar inaccessible absentee ballot problem, Michigan earlier this month agreed to modify its voting procedures in order to make absentee ballots accessible to blind individuals.

65.     As an interim fix, Michigan made its UOCAVA ballot accessible and available to blind voters in Michigan—in addition to military members overseas.

66.     After Michigan agreed to make its absentee ballots accessible, it was able to implement the required alterations to its voting system within days—and in time for a May 5, 2020 election in that state.[21]

67.     Moreover, implementing this interim solution imposed minimal financial costs on Michigan, and would impose similarly minimal costs on Defendants, because it can be implemented quickly and using only widely available commercial software.

68.     While this proposed solution—making UOCAVA absentee ballots available to all blind individuals—may not be a fully compliant, long-term solution

---

[21] Stipulated and Consent Order Resolving Plaintiffs' Motion for Temporary Restraining Order (ECF No. 24), *Powell et al. v. Benson et al.,* Case No. 2:20-Cv-11023-GAD-MJH (E.D. Mich. May 1, 2020).

for other upcoming elections, it will provide improved access for blind voters in Pennsylvania for the June 2, 2020 primary. And Defendants can immediately implement the UOCAVA solution.

**Plaintiffs Gave Defendants Notice of the Ballot Inaccessibility Problems**

69.     Defendants have been told—on many occasions—that the failure to make their absentee and mail-in voting systems accessible to blind individuals violates the ADA and Section 504.

70.     In a 2019 letter to Defendant Boockvar, NFB President Mark A. Riccobono noted that "providing only a paper absentee ballot that was inaccessible" denies blind individuals of their right to vote independently and privately and violates federal laws.

71.     A May 13, 2020 letter to Defendant Boockvar, sent on behalf of the National Federation of the Blind, explained the inaccessible ballot problem, highlighted the accessible UOCAVA ballot solution, and warned of the possibility of litigation if the Commonwealth did not address these issues promptly.

72.     Just before filing this lawsuit, Plaintiffs' counsel again provided notice to Defendants about the instant litigation.

73.     Other disability rights advocates also have explained the accessibility problems—and violations of federal law—outlined in this Complaint to Defendants.

74.     Defendants agree that federal laws guarantee the right of individuals with disabilities to vote privately and independently.[22]

75.     In March 2020, Governor Wolf stressed that the "Department of State will continue to work with local election officials to ensure Pennsylvania has a fair and *accessible* election."[23]

76.     To date, however, Defendants have refused to make the June 2, 2020 election accessible to blind individuals, including Plaintiffs, who wish to exercise their right to vote but do not wish to risk their health in order to do so.

## COUNT I
## Violation of Title II of the Americans with Disabilities Act
## 42 U.S.C. § 12131–12134

77.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

---

[22] Pennsylvania Department of State, Your Rights: Your election rights are protected by U.S. and Pennsylvania law, https://www.votespa.com/Your-Rights/Pages/default.aspx; Pennsylvania Department of State, Your voting rights and the law, https://www.votespa.com/Your-Rights/Pages/Voting-Rights-and-the-law.aspx.

[23] Press Release, Gov. Wolf Signs COVID-19 Response Bills to Bolster Health Care System, Workers, and Education and Reschedule the Primary Election (March 27, 2020) (emphasis added), www.governor.pa.gov/newsroom/gov-wolf-signs-covid-19-response-bills-to-bolster-health-care-system-workers-and-education-and-reschedule-the-primary-election/.

78.     Title II of the ADA guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

79.     Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

80.     In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

81.     Public entities must make reasonable modifications to their policies, practices, and procedures when necessary to avoid discrimination against individuals with disabilities. *Id.* § 35.130(b)(7)(i).

82.     Furthermore, public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford

individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160.

83.   To be effective, "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2).

84.   Auxiliary aids and services include "screen reader software; magnification software; optical readers; … accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." *Id.* § 35.104.

85.   Because they are blind, Mr. Drenth and other NFB-PA members are individuals with disabilities protected by the ADA. *See* 42 U.S.C. § 12102; 28 C.F.R. § 35.108.

86.   Mr. Drenth and other NFB-PA members are registered to vote in Pennsylvania and intend to vote in the June 2, 2020 primary election and other upcoming elections. Mr. Drenth and other NFB-PA members are qualified to receive voting services from Defendants and are entitled to the protections afforded under the ADA. *See* 42 U.S.C. § 12131(2).

87.   Defendant Boockvar heads the Department of State. The Department of State is a public entity subject to Title II of the ADA. *See* 42 U.S.C. § 12131(1).

88.     Voting by absentee or mail-in ballot is a service, program, or activity provided by Defendants.

89.     Defendants' absentee and mail-in voting process discriminates against Plaintiffs and other blind voters because these blind individuals cannot vote secretly and independently, but other voters can.

90.     Defendants have failed to provide Plaintiffs and other blind voters with an opportunity to vote by absentee or mail-in ballot that is equal to the opportunity provided to other voters that do not have disabilities.

91.     Defendants could make reasonable modifications to their absentee and mail-in ballot voting process by offering accessible online voting to Plaintiffs and other voters who are blind.

92.     Defendants have failed to afford Plaintiffs and blind voters auxiliary aids and services necessary to afford them effective communication in the absentee and mail-in voting process.

93.     Defendants have excluded and continue to exclude Plaintiffs and other voters who are blind from participation in, and denied them the benefits of, or otherwise discriminated against them in, its service, program, or activity of voting by absentee or mail-in ballot.

94.     As a result of Defendants' actions and inactions, Plaintiffs and those similarly situated have suffered and will continue to suffer irreparable harm. They

have suffered and continue to suffer from discrimination and unequal access to

Defendant's programs, services, or activities. And in the absence of injunctive

relief, Plaintiffs and those similarly situated will be denied their right to vote by

absentee or mail-in ballot privately and independently.

95.     In light of COVID-19, Plaintiffs and other blind voters are at

imminent risk of irreparable harm absent injunctive relief for the June 2, 2020

primary that would provide an accessible, online voting option. Many blind

individuals do not have assistance in their homes to complete paper mail-in or

absentee ballots. For that reason, Defendants' actions and inactions may prevent

such individuals from voting in the upcoming primary.

96.     Because of Defendants' intransigence, Plaintiffs and other blind

individuals will face the unconscionable choice of either leaving their homes in

order to receive in-person assistance with voting at the closest polling place—

thereby facing the threat of severe illness or death—or staying home and foregoing

the right to vote privately and independently (if third-party assistance is available),

or the right to vote entirely (if it is not).

97.     Defendants' failure to meet their obligations to provide blind voters

with an equal opportunity to vote by absentee or mail-in ballot is an ongoing

violation of the ADA and its implementing regulations. Unless restrained from

doing so, Defendant will continue to violate the ADA and to inflict irreparable

injuries for which Plaintiffs have no adequate remedy at law.

98.    Plaintiffs are entitled to injunctive relief, including the requested temporary restraining order, as well as reasonable attorney's fees and costs.

### COUNT II
### Violation of Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794 *et seq.*

99.    Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

100.    Plaintiff Drenth and NFB-PA members are individuals with disabilities who are registered and eligible to vote and, thus, are protected by Section 504. The Department of State receives federal financial assistance and thus is subject to Section 504. 29 U.S.C. § 794.

101.    Section 504 mandates that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." *Id.* § 794(a).

102.    Section 504 defines "program or activity" to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is

extended, in the case of assistance to a State or local government[.]" *Id.* §

794(b)(1).

103.    Such federally-funded entities may not, in providing aids, benefits, or

services, "[d]eny a qualified handicapped person the opportunity accorded others

to participate in the program or activity receiving Federal financial assistance." 28

C.F.R. § 42.503(b)(1)(i).

104.    Such federally-funded entities must also "insure that communications

with their … beneficiaries are effectively conveyed to those having impaired vision

and hearing," *id.* § 42.503(e), and, if the entity has 15 or more employees, must

"provide appropriate auxiliary aids to qualified handicapped persons with impaired

sensory, manual, or speaking skills where a refusal to make such provision would

discriminatorily impair or exclude the participation of such persons in a program or

activity receiving Federal financial assistance," *id.* § 42.503(f).

105.    Defendant Department of State is an agency or instrumentality of the

Commonwealth of Pennsylvania, receives federal financial assistance, and thereby

is subject to the requirements of Section 504.

106.    Absentee voting is a service, program, or activity provided by

Defendants.

107.    Plaintiffs are people with disabilities under Section 504.

108.    Plaintiffs are registered to vote in Pennsylvania as either Democrats or

Republicans and are thus qualified individuals with disabilities entitled to the

protections of Section 504.

109.   Defendants have failed and continue to fail to meet their obligations to

provide blind voters an opportunity to vote that is equal to the opportunity

provided to other voters.

110.   In denying use of an accessible absentee or mail-in ballot system,

Defendants refuse to provide an auxiliary aid or service that would allow Plaintiffs

equal access to vote.

111.   Accordingly, Defendants have discriminated and continue to

discriminate against Plaintiffs with respect to absentee and mail-in voting.

112.   As a result of Defendants' actions, Plaintiffs have suffered and will

continue to suffer irreparable harm; they have suffered and continue to suffer from

discrimination and unequal access to Defendants' program, service, or activity of

voting by absentee or mail-in ballot.

113.   Accessible absentee and mail-in ballot systems are readily available to

Defendants, and such systems would allow independent, private absentee voting

for blind people.

114.   In the absence of injunctive relief, including a temporary restraining

order, Defendants will continue to deny Plaintiffs their right to vote privately and

independently by mail-in or absentee ballot in the June 2, 2020 primary election

and in future elections.

115.    Unless the requested relief is granted, Plaintiffs will suffer irreparable harm in that they will be discriminated against and denied equal access to the fundamental right to vote.

116.    Plaintiffs are entitled to injunctive relief, including a temporary restraining order, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and award them the following relief:

117.    A temporary restraining order prohibiting Defendant from violating the ADA and Section 504 and requiring Defendant to temporarily remedy its absentee and mail-in ballot system by making its UOCAVA ballot accessible for Plaintiffs and those similarly situated in time for the June 2, 2020 primary election;

118.    A preliminary and permanent injunction prohibiting Defendants from violating the ADA and Section 504 and requiring Defendants to remedy their absentee and mail-in ballot system by implementing a remote accessible vote-by-mail system for Plaintiffs and those similarly situated for all future elections;

119.    A declaration that Defendants have and continue to violate the ADA and Section 504;

120.    An award of Plaintiffs' reasonable attorney's fees, litigation expenses,

and costs; and

      121.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Kobie Flowers*

Kobie Flowers (DC 16511)
Sharon Krevor-Weisbaum (DC 04773)
James Strawbridge (DC 166633)
Brown Goldstein & Levy
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
skw@browngold.com
kflowers@browngold.com
jstrawbridge@browngold.com

*Counsel for Plaintiffs*

/s/ *Kelly Darr*

Kelly Darr (PA 80909)
Disability Rights Pennsylvania
1800 J.F. Kennedy Blvd.
Suite 900
Philadelphia, PA 19103-7421
Phone: 215-238-8070
Fax: 215-238-8070
kdarr@disabilityrightspa.org

*Counsel for Plaintiffs*