# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **Joseph Drenth, and the** | : |
| **National Federation of the** | : |
| **Blind of Pennsylvania,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : |
| | : |
| **Kathy Boockvar,** | : |
| **Secretary of the Commonwealth,** | : |
| **in her official capacity, and the** | : |
| **Department of State of the** | : |
| **Commonwealth of Pennsylvania,** | : |
| | : |
| **Defendants.** | : |
| | : |

_____

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE <u>ALTERNATIVE, PRELIMINARY INJUNCTION</u>

Kobie Flowers (MD 0106200084)
Sharon Krevor-Weisbaum (MD 8712010337)
James Strawbridge (MD 1612140265)
Brown Goldstein Levy LLP
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
skw@browngold.com
kflowers@browngold.com
jstrawbridge@browngold.com

Kelly Darr (PA 80909)
Disability Rights Pennsylvania
1800 J.F. Kennedy Blvd.
Suite 900
Philadelphia, PA 19103-7421
Phone: 215-238-8070
Fax: 215-772-3126
kdarr@disabilityrightspa.org

# TABLE OF CITATIONS

## CASES

*American Council of the Blind v. Paulson*,
525 F.3d 1256 (D.C. Cir. 2008) .......................................................... 14

*Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*,
528 F.3d 176 (3d Cir. 2008) ................................................................ 10

*Berardelli v. Allied Services Inst. of Rehab. Med.*,
900 F.3d 104 (3d Cir. 2018) ................................................................ 11

*Cerro Fabricated Prod. LLC v. Solanick*,
300 F. Supp. 3d 632 (M.D. Pa. 2018) ................................................ 10

*Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*,
587 F.3d 176 (3d Cir. 2009) ................................................................ 11

*Corp. Synergies Grp., LLC v. Andrews*,
775 F. App'x 54 (3d Cir. 2019) .......................................................... 10

*Council of Alternative Political Parties v. Hooks*,
121 F.3d 876 (3d Cir. 1997) ................................................................ 16

*Disability Rights Pennsylvania, et al., v. Boockvar*,
(Pa. 2020) (No. 83 MM 2020) .............................................................. 5

*Furgess v. Pennsylvania Dep't of Corrections*,
933 F.3d 285 (3d Cir. 2019) ................................................................ 11

*Harman v. Forssenius*,
380 U.S. 528 (1965) ............................................................................... 1

*Illinois State Bd. of Elections v. Socialist Workers Party*,
440 U.S. 173 (1979) ............................................................................. 17

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir.1989) ................................................................. 16

*Marks v. Stinson*,
1994 WL 47710 (E.D. Pa. Feb. 18, 1994) .......................................... 16

*Nat'l Fed'n of the Blind, Inc. v. Lamone*,
2014 WL 4388342 (D. Md. Sept. 4, 2014) ......................................... 16

*National Federation of the Blind v. Lamone*,
  813 F.3d 494 (4th Cir. 2016) ................................................................. 13, 15, 16

*Obama for Am. v. Husted*,
  697 F.3d 423 (6th Cir. 2012) ................................................................. 18

*Powell v. Benson*,
  Case No. 2:20-cv-11023-GAD-MJH (E.D. Mich. May 19, 2020) ..................... 17

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ................................................................. 10

*Temple Univ. v. White*,
  941 F.2d 201 (3d Cir. 1991) ................................................................. 18

*Tennessee v. Lane*,
  541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) ......................................... 14

*Yeskey v. Pennsylvania Dep't of Corr.*,
  118 F.3d 168 (3d Cir. 1997) ................................................................. 11

**STATUTES**

25 Pa. Stat. Ann. § 3146.2 ................................................................. 5, 6

25 Pa. Stat. Ann. § 3146.6 ................................................................. 6

25 Pa. Stat. Ann. § 3146.8 ................................................................. 6

25 Pa. Stat. Ann. § 3150.12 ................................................................. 6

25 Pa. Stat. Ann. § 3150.16 ................................................................. 6

28 C.F.R. § 35.130 ................................................................. 14, 15

28 C.F.R. § 35.164 ................................................................. 15

28 U.S.C. § 35.130 ................................................................. 12

28 U.S.C. § 35.160 ................................................................. 12

29 U.S.C. § 705 ................................................................. 11

29 U.S.C. § 794 ................................................................. 2, 11

42 U.S.C. § 12101 ................................................................. 14

42 U.S.C. § 12102 ................................................................. 11

42 U.S.C. § 12131 ................................................................. 2, 11

ii

42 U.S.C. § 12132 ...................................................................................12

52 U.S.C. § 20301 .....................................................................................3

Pa. Const., Art. VII, § 4 ...........................................................................1

**OTHER AUTHORITIES**

Department of State, *Election Operations During COVID-19* at 8 (April 28, 2020) www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/ PADOS_ElectionOperationsDuringCOVID19.pdf. ...............................7

Lisa Schur & Douglas Kruse, *Fact Sheet: Disability and Voter Turnout in the 2018 Elections*, Rutgers School of Management & Labor Relations 5 (May 18, 2020), https://smlr.rutgers.edu/sites/default/files/2018disabilityturnout.pdf...................2

Voting by Absentee or Mail-in Ballot (May 18, 2020), https://www.votespa.com/ Voting-in-PA/Pages/Mail-and-Absentee-Ballot.aspx.......................................5, 6

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................1

II.     PROCEDURAL HISTORY.......................................................3

III.    STATEMENT OF FACTS ........................................................4

    A.    COVID-19's Effect on Pennsylvania's June 2, 2020 Primary Election
        ..................................................................................................4

    B.    The Absentee and Mail-In Ballot Process is Inaccessible ..................5

    C.    Plaintiffs Gave Defendants Notice of the Ballot Inaccessibility
        Problem............................................................................................6

    D.    Pennsylvania's UOCAVA Ballot Can Temporarily Solve Its Ballot
        Problem for the June 2, 2020 Primary Election ...................................7

    E.    Plaintiff Joseph Drenth and Plaintiff NFB-PA .........................8

IV.     STATEMENT OF THE QUESTION INVOLVED ...................................9

V.      ARGUMENT........................................................................10

    A.    Plaintiffs Have a Likelihood of Success on the Merits Because
        Defendants Discriminate Against Plaintiffs in Violation of the ADA
        and Section 504 ................................................................................10

    B.    Plaintiffs Are People with Disabilities and Are Registered to Vote...11

    C.    Defendants Discriminate Against Plaintiffs By Failing to Provide an
        Accessible Absentee or Mail-In Ballot for Blind People....................12

    D.    It Would Not Be a Fundamental Alteration for Defendants to Make
        the UOCAVA Ballot Accessible and Available for the June 2 Primary
        ..................................................................................................15

        1.   Plaintiffs Are At Imminent Risk of Irreparable Harm.............15

        2.   A TRO Will Not Harm Defendants but Will Advance the
            Public Interest by Promoting Voting Rights and Safeguarding
            Health ...............................................................................17

        3.   The Court Should Waive Bond................................................18

VI.     CONCLUSION ......................................................................19

## I.   <u>INTRODUCTION</u>

> I care deeply about participating in the democratic
> process and in making sure that my voice is heard. . . I
> want to vote by myself, without relying on help from
> another person to mark my ballot. . .

> Joseph Drenth[1]

The right to vote is fundamental to American democracy. "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Harman v. Forssenius*, 380 U.S. 528, 537 (1965). The right to vote in secrecy is enshrined in the Pennsylvania Constitution. Pa. Const., Art. VII, § 4.

The absentee and mail-in ballot system in Pennsylvania is inaccessible to blind[2] voters, like Plaintiff Drenth and members of Plaintiff National Federation of the Blind of Pennsylvania ("NFB-PA"), because it requires them to rely on third parties to complete the paper ballots, depriving them of the right to vote in secrecy that is available to other voters using absentee and mail-in ballots. This is part of a long history of discriminatory barriers—from inaccessible transportation, to

---

[1]  Ex. A ¶ 17 (J. Drenth Decl.).

[2]  For semantic convenience and to comply with the 5,000 word count requirement of Local Rule 7.8(b)(2), the term "blind" is used in its broadest sense to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access print.

1

inaccessible polling places, to inaccessible voting machines—that people with disabilities, including blind voters, have had to endure. Consequently, their voter turnout has been lower than the turnout among voters without disabilities.[3] However, this does not reflect a lack of interest in voting. Voter turnout has increased substantially across the country in recent years, as states reduce barriers to voting for the disabled.

By denying blind voters equal access to use of the absentee and mail-in ballot process based on their disabilities, Pennsylvania's inaccessible absentee and mail-in ballot system violates Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794(a) *et seq*. These violations will be particularly harmful absent immediate relief for the June 2, 2020 primary election. Due to the current COVID-19 pandemic, Pennsylvania will require blind voters to make an unfair choice for the primary. They must either: a) forfeit their right to vote privately and independently by relying on a third-party to assist them with an inaccessible paper ballot or b) risk their health and the health of their loved ones by traveling to a polling place to cast their vote in person in the midst of a pandemic.

---

[3]  Lisa Schur & Douglas Kruse, *Fact Sheet: Disability and Voter Turnout in the 2018 Elections*, Rutgers School of Management & Labor Relations 5 (May 18, 2020), https://smhr.rutgers.edu/sites/default/files/2018disabilityturnout.pdf

This choice is not necessary.  Pennsylvania can quickly implement a remedy that will suffice for the June 2, 2022 primary by allowing blind voters to use the accessible UOCAVA ballot in that election.[4]  Plaintiffs seek a temporary restraining order ("TRO"), or in the alternative, a preliminary injunction ("PI") to require Defendants to implement such a solution prior to the June 2, 2020 primary to prevent the immediate, irreparable harm that blind voters would otherwise suffer.[5]

## II.   **<u>PROCEDURAL HISTORY</u>**

On May 21, 2020, Plaintiffs Joseph Drenth and NFB-PA filed this lawsuit against Defendants Secretary of the Commonwealth for Pennsylvania Kathy Boockvar and the Pennsylvania Department of State ("DOS").  ECF No. 1. Plaintiffs file this request for immediate relief because the June 2, 2020 primary election is only days away, and Defendants have refused to make absentee and mail-in ballots accessible to blind voters during a pandemic.

---

[4]  This is the system that Pennsylvania uses to electronically send ballots to overseas military Pennsylvanians under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. §§ 20301 *et seq.* As explained *infra*, Pennsylvania's UOCAVA system can be made accessible and available to blind voters by the June 2, 2020 primary election.

[5]  For future elections, Plaintiffs will seek preliminary and/or permanent injunctive relief for a more appropriate accessible voting system.

## III.   STATEMENT OF FACTS

### A.   COVID-19's Effect on Pennsylvania's June 2, 2020 Primary Election

The effects of COVID-19 on the upcoming June 2, 2020 primary are significant. Nationwide, as of May 20, 2020, there have been 1,528,235 total cases of COVID-19, and 91,664 deaths.[6] In Pennsylvania, as of May 20, 2020, there have been 64,412 total cases of COVID-19 and 4,767 deaths.[7] COVID-19 poses particular concerns for people with disabilities.[8] Many Pennsylvanians are expected to vote by absentee or mail-in ballot in the upcoming June 2, 2020 primary elections. Both the Centers for Disease Control and Defendants have encouraged people to use an absentee or mail-in ballot rather than traveling to

---

[6] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Cases in the U.S. (May 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[7] Pennsylvania Department of Health, COVID-19 Data for Pennsylvania (May 20, 2020), https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx.

[8] *See* CDC, *People Who Need Extra Precautions: People with Disabilities* (May 21, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html.

polling places.[9] Plaintiff Drenth applied for a mail-in ballot.[10] As of May 10, 2020, Pennsylvanians submitted 1,209,289 applications for absentee and mail-in ballots for the June 2, 2020 primary election. By comparison, the 2018 primary election generated 1,563,373 votes for *all* ballots.[11] In sum, there will be a substantial number of voters using the absentee and mail-in ballots for the June 2, 2020 primary, so they do not have to vote in person during the COVID-19 pandemic.

### B.    The Absentee and Mail-In Ballot Process is Inaccessible

Pennsylvanians have two options to limit their exposure to others at the polls: an "absentee" ballot and a "mail-in" ballot. To receive an absentee or mail-in ballot, a voter must apply to the relevant county board of elections. *See* 25 Pa. Stat. Ann. § 3146.2(e). The deadline for requesting an absentee ballot or mail-in ballot is May 26, 2020 for the upcoming June 2, 2020 primary election.[12]

---

[9] *See* https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last visited May 12, 2020); Act 12 Guidance, Guidance on Election Operations During COVID-19 (May 12, 2020), www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS_ElectionOperationsDuringCOVID19.pdf

[10]  Ex. A ¶ 15 (J. Drenth Decl.).

[11] *See* Ex. G. at 7 (J. Marks Decl. in Support of Respondents' Response in Opp'n. to Application for Special Relief in the Nature of a Prelim. Injunction, *Disability Rights Pennsylvania*, *et al., v. Boockvar*, (Pa. 2020) (No. 83 MM 2020)).

[12]  *See* Ex. E at 1 (Voting by Absentee or Mail-in Ballot (May 18, 2020), https://www.votespa.com/Voting-in-PA/Pages/Mail-and-Absentee-Ballot.aspx).

Although Pennsylvanians may apply for an absentee or mail-in ballot by various means—including using an online system administered by Defendants—the result is always the same: if the application is approved, the voter receives a paper ballot, which must be filled out by hand and mailed back to a county election office.[13] 25 Pa. Stat. Ann. §§ 3146.2a(a.3)(3), 3150.12b(a)(1). The voter must assure that the completed ballot is received by the county board of elections no later than June 2, 2020 at 8 p.m. *See id.* §§ 3146.6(c), 3146.8(g)(1)(ii), 3150.16(c).

Blind voters, including Plaintiffs, are unable to complete the absentee and mail-in paper ballots without assistance from third parties, including because they cannot read and mark the paper ballot. As a result, they cannot vote privately and independently—unlike voters who are not blind.[14]

### C.   Plaintiffs Gave Defendants Notice of the Ballot Inaccessibility Problem

Plaintiffs have informed Defendants that inaccessible absentee ballots violate federal laws. In a 2019 letter to Defendant Boockvar, NFB President Mark Riccobono noted that "providing only a paper absentee ballot that was

---

[13] *See generally* Ex. E (Voting by Absentee or Mail-in Ballot, (May 18, 2020), https://www.votespa.com/Voting-in-PA/Pages/Mail-and-Absentee-Ballot.aspx); Ex. J (Paper Mail-In Ballot for Chalfont, PA (Bucks County)).

[14] *See* Ex. A ¶ 9 (J. Drenth Decl.); Ex. B ¶¶ 10-12 (L. Heitz Decl.).

inaccessible" denies blind individuals of their right to vote independently and privately and violates federal laws.[15] In recent weeks, NFB-PA representatives have reiterated these problems to Department of State employees.[16]

Pennsylvania has admitted its absentee and mail-in ballots are not accessible. On April 28, 2020, Defendants acknowledged that they "[are] working to procure and implement an online tool for accessible vote by mail in all counties."[17] But, to date, no online tool for accessible voting exists in any county.

**D.     Pennsylvania's UOCAVA Ballot Can Temporarily Solve Its Ballot Problem for the June 2, 2020 Primary Election**

Given its obligations under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), Pennsylvania has a process in place that allows ballots to be delivered and received via email in PDF format. That PDF can be made accessible and fillable in a matter of minutes, so that blind people using screen

---

[15]  Ex. D at 1 (Ltr. M. Riccobono to K. Boockvar, Sept. 27, 2019).

[16]  Ex. K ¶ 4-12 (K. Darr Certification); Ex. L. (Ltr. K. Darr to T. Gates, Feb. 19, 2020), Ex. I. (Ltr. S. Krevor-Weisbaum to K. Boockvar, May 13, 2020).

[17] Department of State, *Election Operations During COVID-19* at 8 (April 28, 2020) ("[V]oters who are visually impaired or who may have difficulty marking their ballot will need access to accessible voting equipment, and cannot rely solely on vote by mail/absentee voting."), www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS_ElectionOperationsDuringCOVID19.pdf.

reader technology can mark the ballot in secrecy without involving third-parties and return it via mail.[18] Thus, the technology that would enable Defendants to modify their absentee and mail-in voting system such that blind individuals could vote privately and independently on June 2, 2020, is both available to Defendants[19] and easy to use.[20]

### E.    Plaintiff Joseph Drenth and Plaintiff NFB-PA

Joseph Drenth is legally blind and he wants to vote. Each year he has gone to the polls to cast his vote. This year he will not go to the polls because of COVID-19 and he applied for a mail-in ballot. For Mr. Drenth, "traveling to a polling place and voting in person on June 2, 2020 would risk my health and the health of family." He, his wife, and his mother-in-law have vulnerable health conditions and they all live together. Mr. Drenth struggles with "social distancing" because of his disability. In his words, "I cannot know in advance whether other people at the polling place will wear gloves or face masks. Once I am there, I cannot determine on my own how many people are around me and whether they

---

[18]  Ex. C ¶¶ 9-10 (L. Blake Decl.).

[19]  Ex. C. ¶¶ 6-11 (L. Blake Decl.) (explaining how Defendants could use the UOCAVA system to make absentee voting accessible to blind people by the June 2, 2020 primary election).

[20]  Ex. C ¶¶ 15-17 (L. Blake Decl.).

are maintaining adequate 'social distancing.'" If Defendants fail to provide an accessible mail-in ballot for the June 2, 2020 primary, then Mr. Drenth will not take the risk to vote. [21]

The NFB-PA is an affiliate of the NFB, which is the oldest and largest national organization of blind persons. The NFB-PA promotes the general welfare of the blind by helping them integrate into society on terms of equality. This goal includes helping the blind vote.  NFB-PA members are blind and are denied equal access to the absentee and mail-in ballot process because it is inaccessible, resulting in the denial of their right to use that process to vote in secrecy like other voters.[22]

## IV.   <u>STATEMENT OF THE QUESTION INVOLVED</u>

Are Plaintiffs entitled to a TRO or, alternatively, a preliminary injunction so they can vote at the June 2, 2020 primary election?

*Suggested answer: Yes*

---

[21]   Ex. A ¶¶ 2, 4, 10-11, 12, 13 14, & 19 (J. Drenth Decl.).

[22]   Ex. B ¶¶ 4-5 (L. Heitz Decl.).

## V.  <u>ARGUMENT</u>

### A.  **Plaintiffs Have a Likelihood of Success on the Merits Because Defendants Discriminate Against Plaintiffs in Violation of the ADA and Section 504**

The test for issuing a TRO is the same for issuing a PI. *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 58 (3d Cir. 2019); *Cerro Fabricated Prod. LLC v. Solanick*, 300 F. Supp. 3d 632, 647 (M.D. Pa. 2018). A plaintiff must establish "a reasonable probability of eventual success in the litigation" and "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017). If the plaintiff establishes those two factors, the court also should consider the "possibility of harm to other interested persons from the grant or denial of the injunction" and "the public interest," and then determine "if all four factors, taken together, balance in favor of granting" the TRO. *Id.* Where the relief ordered by a TRO "is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *See Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008).  To demonstrate a "reasonable probability" of success on the merits, a plaintiff must show it has a "significantly better than negligible" chance of prevailing, but it need not demonstrate it is "more-likely-than-not" to prevail. *Reilly*, 858 F.3d at 179 n.3.

<u>10</u>

To prevail on a discrimination claim under either Title II or Section 504, a plaintiff must establish that he (1) has a disability, (2) is otherwise qualified to participate in the service, programs, or activity of the public entity, and (3) is being denied the benefits of the service, program, or activity or is otherwise subject to discrimination because of his disability. *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).[23]

### B.  Plaintiffs Are People with Disabilities and Are Registered to Vote

Because Plaintiffs are blind and registered to vote in Pennsylvania, they are "qualified individual[s]" with a disability. *See* 42 U.S.C. §§ 12102(1), 12131(2); 29 U.S.C. § 705(20)(B). The Commonwealth's system of voting by absentee or mail-in ballots constitutes a service, program, or activity under the ADA—indeed, ADA requirements apply broadly to almost "anything a public entity does." *Yeskey v. Pennsylvania Dep't of Corr.*, 118 F.3d 168, 171 & n.5 (3d Cir. 1997).

---

[23] Section 504 of the RA is generally co-extensive with Title II of the ADA and construed consistently. *See Furgess v. Pennsylvania Dep't of Corrections,* 933 F.3d 285, 288 (3d Cir. 2019); *Berardelli v. Allied Services Inst. of Rehab. Med.*, 900 F.3d 104, 114-18 (3d Cir. 2018). The only additional element for a Section 504 claim is that the defendant must receive federal funding. 29 U.S.C. § 794(a). DOS receives federal funds to help administer its elections. *See* Ex. H (2020 Federal Grants (May 19, 2020), (explaining that Defendants used federal funding to address the cost of absentee and mail-in ballots due to COVID-19)). Plaintiffs' references to the "ADA" in this Brief include both the ADA and Section 504.

**C.      Defendants Discriminate Against Plaintiffs By Failing to Provide an Accessible Absentee or Mail-In Ballot for Blind People**

Title II of the ADA prohibits Defendants from administering its mail-in and absentee voting systems in a manner that excludes qualified individuals with disabilities from participating in or denying them the benefit of their programs, services, or activities or otherwise subjecting them to discrimination.  42 U.S.C. § 12132.  The broad spectrum of unlawful "discrimination" under the ADA includes;  (1) denying people with disabilities an opportunity to participate in the state's benefits and services that is not equal to that afforded others; (2) providing people with disabilities with a service that is not as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that afforded to others; (3) the failure to make reasonable modifications to policies, practices, and procedures when necessary to afford people with disabilities equal access to the state's services, programs, and activities; and (4) the failure to assure effective communication with people with disabilities, including the failure to provide auxiliary aids and services, including accessible electronic and information technology. 28 U.S.C. §§ 35.130(b)(1)(ii), 35.130(b)(1)(iii), 35.130(b)(7)(i), 35.160.[24]

---

[24] The purpose of the auxiliary aid and service requirement is to ensure that the person with a disability has equal opportunity to benefit and participate in the program. Defendants fail to provide Plaintiffs with the equal opportunity to vote by

By relying on paper absentee and mail-in ballots, DOS violates Title II of the ADA.  Paper ballots deny voters with visual disabilities equal access to the absentee and mail-in voting processes.  Completion of paper ballots requires voters with visual disabilities to have assistance – they must ask someone to read the ballot and complete it for them.  Unlike voters who do not have visual disabilities, they cannot vote in secrecy and their privacy is violated.  Such a system denies blind voters equal opportunity to participate in the absentee and mail-in voting process and affords them a service that is not as effective as that provided to non-blind voters.  Moreover, DOS's failure to provide an online, accessible voting system, such as the UOCAVA system, which would be an appropriate accessible interim solution, violates the ADA's reasonable modification and effective communication and auxiliary aids and services mandates.

In *National Federation of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016), the Fourth Circuit held that Maryland election officials violated Title II of the ADA and Section 504 of the RA by relying exclusively on paper ballots in its absentee ballot process.  Affirming the district court's finding that voters with visual disabilities cannot mark their paper ballots without assistance, unlike voters without such disabilities, the court determined that "[t]his sharp disparity makes

---

absentee and mail-in ballot privately and independently. *See National Federation of the Blind. v. Lamone*, 813 F.3d 494 (4th Cir. 2016).

obvious that defendants have provided 'an aid, benefit, or service [to disabled

individuals] that is not as effective in affording equal opportunity to obtain the

same result, to gain the same benefit, or to reach the same level of achievement as

that provided to others.'" Id. at 506 (citations omitted).  The court concluded:

> Voting is a quintessential public activity.  In enacting the
> ADA, Congress explicitly found that "'individuals with
> disabilities … have been … relegated to a position of
> political powerlessness in our society, based on
> characteristics that are beyond the control of such
> individuals.'" *Tennessee v. Lane*, 541 U.S. 509, 516, 124
> S.Ct. 1978, 158 L.Ed.2d 820 (2004) (quoting 42 U.S.C.
> § 12101(a)(7)).  Ensuring that disabled individuals are
> afforded an opportunity to participate in voting that is
> equal to that afforded others, 28 C.F.R. § 35.130, helps
> ensure that those individuals are never relegated to a
> position of political powerlessness. *We affirm the district
> court's conclusion that by effectively requiring disabled
> individuals to rely on the assistance of others to vote
> absentee, defendants have not provided plaintiffs with
> meaningful access to Maryland's absentee voting
> program.*

*Id.* at 507 (emphasis added).

The law does not permit Defendants to require that disabled individuals rely

upon the kindness, availability, and accuracy of nondisabled third parties to assist

them in filling out their absentee ballots. *See, e.g.*, *American Council of the Blind

v. Paulson*, 525 F.3d 1256, 1264 (D.C. Cir. 2008) (While "[t]here was a time when

disabled people had no choice but to ask for help – to rely on the kindness of

strangers[,] … [i]t can no longer be successfully argued that a blind person has

meaningful access to currency if she cannot accurately identify paper money

without assistance.") (alterations in original).

### D. It Would Not Be a Fundamental Alteration for Defendants to Make the UOCAVA Ballot Accessible and Available for the June 2 Primary

While Defendants are not required to make reasonable modifications or

provide auxiliary aids and services if doing so would result in a fundamental

alteration of its voting system, 28 C.F.R. § 35.164; 28 C.F.R. § 35.130(b)(7)(i),

Defendants would bear the burden of proving this affirmative defense, and other

courts have rejected it. *See, e,g, Lamone*, 813 F.3d at 509–10. Here, Defendants

could not make such a showing. Defendants may cure the discrimination inherent

in the Commonwealth's absentee and mail-in voting systems through auxiliary aids

and services that would not fundamentally alter the nature of these programs. As

explained the UOCAVA ballot system already exists in Pennsylvania and it can be

made accessible in days, so that the blind can vote by absentee and mail-in ballots

in privacy – like other voters – for the June 2 primary.

### 1. Plaintiffs Are At Imminent Risk of Irreparable Harm

Plaintiffs also will likely establish that, absent a TRO for the short term (i.e.,

the June 2, 2020 primary election), they are at imminent risk of suffering

irreparable harm. "In order to demonstrate irreparable harm[,] the plaintiff must

demonstrate potential harm which cannot be redressed by a legal or an equitable

remedy following a trial. *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989). That is the case here.

Absent an injunction, Plaintiffs will be forced either to risk their health and their loved ones' health by traveling to a polling place on election day, which no other citizens of the Commonwealth will have to do, or forfeit their right to vote privately and independently in the June 2, 2020 primary election by seeking assistance with an absentee or mail-in ballot. Infringement of voting rights "cannot be alleviated after the election" and thus constitutes irreparable harm. *See Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 883 (3d Cir. 1997); *Marks v. Stinson,* 1994 WL 47710, at *14 (E.D. Pa. Feb. 18, 1994), *vacated in part,* 19 F.3d 873 (3d Cir. 1994) ("Plaintiffs . . . suffer irreparable harm when a state representative is not properly elected.").

Here, as in *Lamone,* because Plaintiffs "are being deprived of their right to vote by absentee ballot privately and independently," the "[r]emedies available at law are inadequate to compensate [them] for [this] violation." *Nat'l Fed'n of the Blind, Inc. v. Lamone,* 2014 WL 4388342, at *15 (D. Md. Sept. 4, 2014), *aff'd sub nom. Nat'l Fed'n of the Blind v. Lamone,* 813 F.3d 494 (4th Cir. 2016).

### 2.   A TRO Will Not Harm Defendants but Will Advance the Public Interest by Promoting Voting Rights and Safeguarding Health

The final two factors—the "possibility of harm to other interested persons from the grant or denial of the injunction" and "the public interest"—also cut sharply in favor of Plaintiffs. With respect to the former, "voting is of the most fundamental significance under our constitutional structure," *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). Absent an injunction, Plaintiffs voting rights will be impinged, because they will not be able to fill out an absentee or mail-in ballot privately and independently—or else Plaintiffs will be forced to risk their health in order to exercise the franchise.

By contrast, adoption of UOCAVA solution will impose minimal costs on Defendants. Michigan recently agreed to use the UOCAVA solution for its primary.[25]   On May 1, 2020, a few days after blind voters filed an ADA and Section 504 lawsuit challenging the inaccessibility of its absentee ballot process, Michigan entered into a Stipulation and Consent Order, which the court approved, to make its UOCAVA program available to disabled voters for the May 5, 2020 election. Michigan had four days to implement this change. Michigan already had the technology available, and successfully provided the plaintiffs and other voters

---

[25] Ex. N, Stipulation and Consent Order filed in *Powell v. Benson*, Case No. 2:20-cv-11023-GAD-MJH (E.D. Mich. May 19, 2020).

with disabilities access to an accessible absentee ballot in advance of the May 5, 2020 election. On May 19, 2020, the Michigan court approved a consent decree requiring Michigan to adopt an accessible online ballot marking tool in time for its August and November 2020 elections.[26]

With respect to the public interest, the public has a "strong interest in exercising the fundamental political right' to vote"—meaning that "[t]he public interests therefore favors permitting as many qualified voters to vote as possible." *Obama for Am. v. Husted*, 697 F.3d 423, 436–37 (6th Cir. 2012). A TRO also would enable more citizens to stay at home on election day and promote the public health in compliance with state and federal guidance.

### 3.   The Court Should Waive Bond

Federal Rule of Civil Procedure 65(c)'s bond requirement may be waived in non-commercial cases based on: (1) the possible loss to the enjoined party and the hardship that a bond requirement would impose on the applicant, and (2) the special nature of suits to enforce important federal rights. *Temple Univ. v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991).  Here, a bond requirement would impose a significant hardship on Plaintiffs, and this suit is about voting—a federal right. Accordingly, bond should be waived.

---

[26] Ex. F (*Powell v. Benson*, Case No. 2:20-Cv-11023-GAD-MJH (E.D. Mich. May 19, 2020) Stipulation and Consent Order Resolving Plaintiffs' Motion for Temporary Restraining Order (ECF No. 24)).

## VI.    **CONCLUSION**

For the foregoing reasons, this Court should issue a TRO, or alternatively a PI, to require Defendants to make the UOCAVA ballot process accessible and available to Plaintiffs and other blind voters for the June 2, 2020 primary election and to notify voters on DOS's website of the changes.

Respectfully submitted,

/s/ *Kobie Flowers*
Kobie Flowers (MD 0106200084)
Sharon Krevor-Weisbaum
(MD 8712010337)
James Strawbridge (MD 1612140265)
Brown Goldstein & Levy
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
skw@browngold.com
kflowers@browngold.com
jstrawbridge@browngold.com

*Counsel for Plaintiffs*

Dated: May 21, 2020

/s/ *Kelly Darr*
Kelly Darr (PA 80909)
Disability Rights Pennsylvania
1800 J.F. Kennedy Blvd. Suite 900
Philadelphia, PA 19103-7421
Phone: 215-238-8070
Fax: 215-238-8070
kdarr@disabilityrightspa.org

*Counsel for Plaintiffs*

## <u>LOCAL RULE 7.8(b)(2) CERTIFICATE</u>

Pursuant to Local Rule 7.8(b)(2), I certify under penalty of perjury that

Plaintiffs' Brief in Support of Motion for a Temporary Restraining Order and

Preliminary Injunction contains 4,204 words (excluding the Table of Citations and

Table of Contents) based on the processing system used to prepare the Brief (Word

365).

Dated: May 21, 2020          By:     /s/ Kelly Darr
                                     Kelly Darr (PA 80909)
                                     Disability Rights Pennsylvania
                                     1800 J.F. Kennedy Blvd.
                                     Suite 900
                                     Philadelphia, PA 19103-7421
                                     Phone: 215-238-8070
                                     Fax: 215-238-8070
                                     kdarr@disabilityrightspa.org

1

## <u>CERTIFICATE OF SERVICE</u>

I, Kelly Darr, hereby certify that the Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order, Or in the Alternative, Preliminary Injunction was served by email on May 21, 2020, and will be served by first-class mail on May 22, 2020:

Kathy Boockvar, Secretary of the Commonwealth
Department of State
302 North Office Building
401 North Street
Harrisburg, PA  17120-0500
kboockvar@pa.gov

Timothy E. Gates, Chief Counsel
Department of State
Penn Center
2601 North Third Street
Harrisburg, PA  17110
tgates@pa.gov

/s/ Kelly Darr
Kelly Darr (PA 80909)
Disability Rights Pennsylvania
1800 J.F. Kennedy Blvd.
Suite 900
Philadelphia, PA 19103-7421
Phone: 215-238-8070
Fax: 215-238-8070
kdarr@disabilityrightspa.org