**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH DRENTH, *et al.*, | : | Civil No. 1:20-CV-00829 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

This is a civil rights case brought under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Plaintiffs, Joseph Drenth ("Drenth") and the National Federation of the Blind of Pennsylvania, assert that the Commonwealth of Pennsylvania's election policies violate the rights of the blind by not providing accessible ballots for blind individuals to vote privately and independently from home. The case is presently before the court on Plaintiffs' motion for temporary restraining order and/or preliminary injunction, which seeks to compel the Commonwealth to remedy the alleged violation in time for Pennsylvania's primary elections, which are scheduled to proceed on June 2, 2020. For the reasons that follow, Plaintiffs' motion is granted, but the court is ordering Defendants to implement a remedy that has been proposed by Defendants.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Under Pennsylvania election law, an eligible voter may vote without being physically present at a polling location through the use of either an absentee ballot

1

or a mail-in ballot.  Act of Oct. 31, 2019, 2019 Pa. Laws 552.  Such voting is done

through the use of paper ballots that must be mailed to a county board of election.

*Id.* §§ 3146.8; 3150.16.

Although Pennsylvania law allowed all voters to vote through the use of

absentee ballots or mail-in ballots as of October 31, 2019, 2019 Pa. Laws 552, such

policies took on increasing importance when the COVID-19 pandemic began in

Pennsylvania.  COVID-19 is an infectious disease caused by a novel strain of

coronavirus.  *Coronavirus*, WORLD HEALTH ORGANIZATION, https://www.who.

int/health-topics/coronavirus#tab=tab_1 (last visited May 26, 2020).  The first

reported cases of COVID-19 occurred in late 2019.  *Who Timeline – COVID-19*,

WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/detail/27-04-

2020-who-timeline---covid-19 (last visited May 26, 2020).  Since that time, the

coronavirus has grown exponentially and become a global pandemic, with 216

countries reporting confirmed cases of the disease.  *Coronavirus Disease (COVID-

19) Pandemic*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/

diseases/novel-coronavirus-2019 (last visited May 26, 2020).  At the time of this

writing, there were 5,406,282 confirmed cases of COVID-19 around the world,

including 343,562 confirmed deaths.  *Id.*  The United States has become a

particular hot spot for the disease, with 1,618,757 confirmed cases, and 96,909

deaths as of the time of this writing.  *Coronavirus (COVID-19) Dashboard*,

WORLD HEALTH ORGANIZATION, https://covid19.who.int/ (last visited May 26,

2020).  The Commonwealth of Pennsylvania alone has reported 68,637 cases of

COVID-19, including 5,152 deaths.  *COVID-19 Data for Pennsylvania*,

PENNSYLVANIA DEPARTMENT OF HEALTH, https://www.health.pa.gov/topics/

disease/coronavirus/Pages/Cases.aspx.

 At the time of this writing, there is no vaccine for COVID-19, and no

antiviral medications have proven effective in treating the disease.  *Q&A on

Coronavirus (COVID-19): Is There a Vaccine, Drug, or Treatment for COVID-

19?*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/q-a-

detail/q-a-coronaviruses (last visited May 26, 2020).  In the absence of such

solutions, governments have turned to non-medical interventions to try to slow the

spread of the disease, including school closures, restrictions on businesses and

large gatherings, stay-at-home orders, and "social distancing" policies.  *See, e.g.*,

*Social Distancing, Quarantine, and Isolation*, CENTERS FOR DISEASE CONTROL

AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-

sick/social-distancing.html (last visited May 26, 2020).

 As part of the non-medical interventions used to combat COVID-19, the

United States Centers for Disease Control and Prevention has recommended that

states encourage mail-in voting in elections whenever possible.  *Recommendations

for Election Polling Locations*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-

locations.html (last visited May 26, 2020).  In line with that guidance,

Pennsylvania has publicized the availability of mail-in ballot options and has

encouraged voters to use those options.  *Secretary of State Reminds Voters of New*

*Mail-In Voting Options Amid Coronavirus Concerns* (March 12, 2020), PA MEDIA,

https://www.media.pa.gov/Pages/State-Details.aspx?newsid=374.  The court

understands that as of May 27, 2020, over 1.8 million Pennsylvania voters have

applied for mail-in ballots for the June 2, 2020 primary election.

Plaintiffs in the present case filed suit on May 21, 2020, alleging that the

Commonwealth's mail-in ballot and absentee ballot policies violate the ADA and

the RA because they deprive blind Pennsylvanians of the right to vote privately

and independently by absentee or mail-in ballot.  (Doc. 1 ¶ 1.)  Given the risks

posed by the COVID-19 pandemic, Plaintiffs allege that the Commonwealth's

policies place blind individuals in an "impossible bind" of either forfeiting their

right to vote privately and independently or risking their health and safety by

traveling to a polling place to vote in person.  (*Id.* ¶ 7.)

In their complaint, Plaintiffs request that the court require implementation of

an interim remedy to protect the rights of blind individuals in time for the June 2,

2020 primary election and a permanent remedy for all subsequent elections.  (*Id.* ¶¶

9–10.)  Plaintiffs assert that the Commonwealth can implement an interim remedy

by allowing blind individuals to use the Uniformed and Overseas Citizens Absentee Voting Act ballot ("UOCAVA").  (*Id.* ¶ 11.)  Plaintiffs note that the state of Michigan implemented such a system in response to a similar lawsuit on May 1, 2020, which was four days before Michigan's primary was scheduled to take place.  (*Id.* ¶ 12.)

Plaintiffs filed the instant motion for temporary restraining order and/or preliminary injunction along with a supporting brief on May 21, 2020.  (Docs. 4–5.)  The court convened a status conference with the parties the following day, after which the court issued an order that deferred ruling on the motion in order to give the parties an opportunity to negotiate a possible resolution of the motion, set an expedited briefing schedule for the motion, and scheduled a hearing on the motion.  (Doc. 16.)

Defendants filed a brief in opposition to the motion for temporary restraining order and/or preliminary injunction on May 24, 2020.  (Doc. 18.)  Defendants argue that Plaintiffs' proposed use of the UOCAVA is not feasible in Pennsylvania because of differences between Pennsylvania elections and Michigan elections. (*Id.* at 6–7.)  Defendants initially asserted that an alternative remedy—namely use of the Federal Write-In Absentee Ballot "(FWAB")—would be feasible and would adequately protect Plaintiffs' rights.  (*Id.* at 14.)  Subsequently, on May 27, 2020, Defendants identified a second alternative remedy—the Accessible Write-In Ballot

("AWIB")—as a more adequate and feasible alternative remedy to the FWAB

remedy.  (*See* Doc. 29-2.)  Defendants argue that Plaintiffs do not meet the

standard for issuance of a preliminary injunction but that if such an injunction were

to be issued, the court should order the use of the AWIB rather than the UOCAVA.

Plaintiffs filed a reply brief on May 26, 2020.  (Doc. 24.)  In their reply brief

and during the hearing, Plaintiffs argued that contrary to Defendants'

representations, the UOCAVA could feasibly be implemented prior to the June 2,

2020 primary.  (*Id.* at 12–17.)  Plaintiffs additionally argue that neither the FWAB

nor the AWIB are adequate solutions because both introduce the potential for

significant confusion and errors when filling out ballots that would lead to blind

voters' ballots being rejected.  (*See id.* at 18.)

After briefing on the motion for temporary restraining order and/or

preliminary injunction concluded, the court conducted a hearing on the motion on

May 27, 2020, and received additional exhibits during the hearing, *see* Docs. 29-1

to 29-9, including the set of documents that comprise Defendants' proposed AWIB

remedy.  (*See* Docs. 29-2–29-3, 29-5–29-6.)

At the outset of the hearing, the court stated that the motion for temporary

restraining order and/or preliminary injunction would be granted and that the

hearing would focus on the adequacy and feasibility of the proposed remedies.[1]

The court then heard testimony from Lynn Heitz ("Heitz"), the President of the

National Federation of the Blind of Pennsylvania, who testified that the FWAB

presents accessibility problems for blind voters because it requires them to transfer

data from one document to another, which requires them to either copy and paste

the data or remember it and write it in the new document from memory.  Both

processes are more difficult for blind individuals than they would be for sighted

individuals and are rife with the potential for confusion and error.

The court next heard testimony from Professor Jonathan Lazar ("Lazar"), an

expert in the field of accessibility for individuals with disabilities.  Lazar testified

that both the FWAB and the UOCAVA could be converted into accessible fillable

PDFs, but that converting the UOCAVA would take a longer time than converting

the FWAB would, with a possible conversion time of one hour per ballot for a

scanned PDF ballot.  Lazar further testified that the FWAB presents accessibility

problems because the formatting and layout of the ballot are inconsistent and blind

individuals rely heavily on consistent format and consistent layout when using

screen reader technology.  Lazar testified that the FWAB also presents

---

[1] Given the expedited nature of this case, a transcript of proceedings during the hearing was not yet available at the time of this writing.  Accordingly, information regarding the hearing is based on the court's own notes and recollections.

accessibility problems because it relies on the blind individual transferring data

from one document to another.  Such problems, Lazar testified, are not present

with the UOCAVA.

After Lazar, the court heard testimony from Jonathan Marks ("Marks"), the

Deputy Secretary of Elections and Commissions for the Pennsylvania Department

of State.  Marks testified that Pennsylvania's decentralized election system leads to

administrative problems because the Department of State does not physically

possess all ballots used in the state, which are created and generated by each

county's board of elections.  Marks then testified that the AWIB presented a more

accessible solution than the FWAB and could feasibly be implemented in time for

the June 2, 2020 primary.

After concluding Marks's testimony, the court heard rebuttal testimony from

Lazar regarding the feasibility and adequacy of the Defendants' proposed AWIB

solution.  Lazar testified that the AWIB was not an adequate solution and did not

go as far in addressing Plaintiffs' concerns as the UOCAVA would.  Lazar also

noted that some of the same problems identified in the FWAB would still be

present in the AWIB.  For example, the AWIB would still require blind voters to

transfer information from one document to another.  The AWIB also had problems

with inconsistent labeling of text boxes, with the label to the left of the text box in

certain instances and above the text box in other instances.  Such inconsistencies,

Lazar testified, could lead to accessibility problems for blind individuals using screen reader technology.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 allows a district court to enter a preliminary injunction.  To obtain a preliminary injunction, plaintiffs must establish (1) that they are likely to prevail on the merits of the case; (2) that they would suffer irreparable harm if preliminary injunctive relief were denied; (3) that the harm defendants would suffer from the issuance of an injunction would not outweigh the harm plaintiffs would suffer if an injunction were denied; and (4) that the public interest weighs in favor of granting the injunction.  *Holland v. Rosen*, 895 F.3d 272, 285–86 (3d Cir. 2018) (citing *Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015)).  The first two factors are "gateway factors": if the plaintiffs have not established those factors, the court need not consider the last two factors.  *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)).  If the plaintiffs do establish the first two factors,

"[t]he court then determines 'in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'" *Id.* (quoting *Reilly*, 858 F.3d at 179). A party seeking mandatory injunctive relief that would alter, rather than preserve, the status quo, "must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)).

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. __, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Thus, a preliminary injunction should only be awarded in the "limited circumstances" where "the movant, by a clear showing, carries the burden of persuasion." *Holland*, 895 F.3d at 285. Ultimately, the decision of whether to issue a preliminary injunction is left to the sound discretion of the district court. *Pennsylvania v. President of United States*, 930 F.3d 543, 565 (2019) (citing *Winter*, 555 U.S. at 24).

A district court considering whether to issue a preliminary injunction is not limited to the equitable remedies proposed by the moving party. The court has "the freedom to fashion preliminary equitable relief," so long as the court does so by "exercising [its] sound discretion." *Reilly*, 858 F.3d at 178–79 (quoting *Winter*, 555 U.S. at 24). "Crafting a preliminary injunction is an exercise of discretion and

10

judgment, often dependent as much on the equities of a given case as the substance

of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S.

__, 137 S. Ct. 2080, 2087 (2017) (citing *Winter*, 555 U.S. at 20, 24.)

DISCUSSION

**A. Plaintiffs Have a Likelihood of Success on the Merits**

Plaintiffs allege violations of the ADA and the RA.  Under Title II of the

ADA, "no qualified individual with a disability shall, by reason of such disability,

be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any

such entity." 42 U.S.C. § 12132.  Similarly, Section 504 of the RA provides that

"[n]o otherwise qualified individual with a disability in the United States . . . shall,

solely by reason of her or his disability, be excluded from the participation in, be

denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance. . . ."  29 U.S.C. § 794.

Liability under the ADA and RA is governed by the same substantive

standard.  *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d

Cir. 2018) (citing *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir.

2012)).  To prevail on a claim under either statute, a plaintiff must show that "(1)

he is a qualified individual; (2) with a disability; (3) who was excluded from

participation in or denied the benefits of the services, programs, or activities of a

11

public entity, or was subjected to discrimination by any such entity; (4) by reason

of his disability." *Haberle v. Troxel*, 885 F.3d 170, 178 (3d Cir. 2018) (quoting

*Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).  A qualified individual

with a disability is "an individual with a disability who, with or without reasonable

modifications to rules, policies, or practices, the removal of architectural,

communication, or transportation barriers, or the provision of auxiliary aids and

services, meets the essential eligibility requirements for the receipt of services or

the participation in programs or activities provided by a public entity."  42 U.S.C.

§ 12131.

In this case, Plaintiffs are likely to prevail on the merits of their ADA and

RA claims.  As eligible voters who are legally blind, Plaintiffs are qualified

individuals with disabilities.  Plaintiffs have also been denied the benefits of a

public program—in this case the ability to vote privately and independently

without being physically present at a polling location—because of their disability.

Because Plaintiffs are blind, they are unable to complete a paper mail-in ballot or

absentee ballot privately and independently.  Accordingly, the court finds that

Plaintiffs are likely to prevail on the merits of their claims.

### B. Plaintiffs Would Suffer Irreparable Injury if Preliminary Injunctive Relief Were Denied

The court next must consider whether Plaintiffs would suffer irreparable harm if preliminary injunctive relief were denied. *Holland*, 895 F.3d at 285–86. To demonstrate irreparable harm, Plaintiffs "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

Here, Plaintiffs would suffer irreparable injury because they are effectively forced to choose between forfeiting their right to vote privately and independently or risking their health and safety by traveling to a polling place to vote in person. Such a choice burdens Plaintiffs' First Amendment right to vote. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Accordingly, because Plaintiffs' First Amendment rights would be burdened in the absence of preliminary injunctive relief, the court finds that they have established irreparable injury.

### C. The Balancing of Harms and Public Interest Weighs in Favor of Granting Preliminary Injunctive Relief

Having concluded that Plaintiffs have established the first two elements of the preliminary injunction analysis, the court must now weigh the remaining

factors—whether Plaintiffs' irreparable harm is outweighed by the harm Defendants would suffer by the imposition of a preliminary injunction and whether the public interest weighs in favor of granting the injunction.  *Holland*, 895 F.3d at 285–86.  The court finds that these factors weigh in favor of granting a preliminary injunction.  Although an injunction would clearly impose regulatory and monetary costs on Defendants, those costs do not outweigh the irreparable injury Plaintiffs would suffer to their fundamental right to vote.  Similarly, because the right to vote "is of the most fundamental significance under our constitutional structure," *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) (citing *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964)), the court finds that a preliminary injunction protecting Plaintiffs' right to vote independently and privately would be in the public interest.

Accordingly, because Plaintiffs have shown that they are likely to succeed on the merits of their claims, that they would suffer irreparable harm in the absence of an injunction, that their irreparable harm is not outweighed by the potential harm to Defendants, and that the public interest weighs in favor of granting a preliminary injunction, the court will grant Plaintiffs' motion for preliminary injunctive relief.

### D. The Court Will Order Implementation of the AWIB Remedy

Because the court has determined that preliminary injunctive relief is appropriate, the court must determine the form that relief will take.  The parties disagree on what remedy should be imposed.  Plaintiffs seek an order compelling Defendants to make the UOCAVA available to blind voters, while Defendants assert that the UOCAVA is not a feasible solution and propose the AWIB as an alternative.

Based on the testimony, exhibits, briefing and argument provided by the parties—which was produced in a remarkably short time and in an extremely professional manner—the court concludes that none of the remedies identified by the parties for the purpose of Pennsylvania's primary election are entirely adequate to achieve compliance with the ADA and the RA.  None of the identified remedies will ensure that every blind Pennsylvania voter has the ability to vote from home in a manner that is equally effective as the manner available to sighted Pennsylvania voters in the primary election on June 2, 2020.  That is an unfortunate reality conceded by both parties.  Therefore, the court must choose from a few imperfect remedies.  The most imperfect remedy would be to maintain the status quo of completely inaccessible paper mail-in ballots, and the court rejects that option.

Balancing the equities, the court also declines to adopt Plaintiffs' proposed UOCAVA remedy.  The court finds that the UOCAVA remedy is the most

adequate of the three remedies identified by the parties. The UOCAVA remedy

offers the benefits of having been tested in Michigan's May 5, 2020 primary and

providing a more user-friendly option for blind voters that is verifiably accessible

to blind voters.  However, the court is persuaded that it is simply not feasible for

Defendants to implement this remedy in the short time frame remaining before the

primary election.  Based on the testimony presented by Plaintiffs' expert witness

and Defendants' fact witness, the court understands that the process of obtaining

and converting into accessible PDF documents the ballots created in each of

Pennsylvania's election districts in which an eligible blind Pennsylvania voter

requests an accessible ballot could take several thousand hours, and may not be

completed in time despite best efforts.

Therefore, the court will instead order the AWIB remedy identified by

Defendants on May 27, 2020.  As explained during the hearing, Defendants

considered the concerns raised by Plaintiffs with respect to the FWAB and

attempted to address at least some of the concerns with the AWIB remedy.

Defendants have represented that the AWIB remedy is feasible within the time

remaining before the primary election.

The court concludes that Defendants' proposed remedy of utilizing the

AWIB is a more adequate remedy than no remedy at all.  The inability of

Defendants to implement the UOCAVA remedy within the time remaining before

16

the primary is a reality the court cannot ignore.  On balance, the court believes it is

more equitable to order a feasible and moderately adequate remedy over no

remedy at all or a more adequate but infeasible remedy.

Finally, the court notes that the shortness of the time frame within which to

implement a remedy has resulted from Plaintiffs filing suit on May 21, 2020—a

mere 12 days before Pennsylvania's primary election.  Although the parties had the

opportunity to discuss competing remedies for a much longer time period, the court

has been limited to this compressed time period within which to select a remedy

and order its implementation due to the fact that this matter was not docketed until

six days prior to this order.  The court is compelled to expedite the resolution of

Plaintiffs' motion in order to effectuate the implementation of the remedy with

sufficient time for this remedy to be explained to blind Pennsylvania voters and

made available prior to the primary election—which is in six days.  The details of

this remedy will be explained in the implementing order.

### E.  The Bond Requirement Is Waived

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a

preliminary injunction or a temporary restraining order only if the movant gives

security in an amount that the court considers proper to pay the costs and damages

sustained by any party found to have been wrongfully enjoined or restrained."  A

district court may waive the bond requirement under Federal Rule of Civil

Procedure 65(c) under certain circumstances. *Elliott v. Kiesewetter*, 98 F.3d 47, 59–60 (3d Cir. 1996). When considering whether to waive the bond requirement, a court should consider (1) "the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant"; and (2) "the impact that a bond requirement would have on enforcement" of an important federal right. *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991).

Here, because the preliminary injunction seeks protection of Plaintiffs' fundamental right to vote, the court will waive the bond requirement. Imposing a bond requirement on Plaintiffs in this case would effectively force them to pay a monetary cost to enforce their right to vote. Such financial burdens on the right to vote are inappropriate. *Cf. Harper v. Va. State Bd. of Educ.*, 383 U.S. 663, 666 (1966) (finding poll tax unconstitutional). Accordingly, the court will waive the bond requirement.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order and/or preliminary injunction is granted. An appropriate order setting out the relevant remedies will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: May 27, 2020

18