IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JOSEPH DRENTH and THE NATIONAL FEDERATION OF THE BLIND OF PENNSYLVANIA, | : |
| | : |
| | : |
| | : Civil No. 1:20-CV-00829 |
| | : |
| Plaintiffs, | : |
| | : Judge Jennifer P. Wilson |
| v. | : |
| | : |
| KATHY BOOCKVAR, in her official capacity as Secretary of the Commonwealth, and DEPARTMENT OF STATE OF THE COMMONWEALTH OF PENNSYLVANIA, | : |
| | : |
| | : |
| | : |
| | : |
| Defendants. | : |

**BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Kelly Darr
Robin Resnick
Laura Caravello
Disability Rights Pennsylvania
1800 J.F. Kennedy Blvd. Suite 900
Philadelphia, PA  19103-7421
215-238-8070

Kobie Flowers
Sharon Krevor-Weisbaum
James Strawbridge
Brown Goldstein Levy LLP
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
410-962-1030

Counsel for Plaintiffs

# **TABLE OF CONTENTS**

Table of Citations ................................................................................. iii

Introduction ....................................................................................... 1

Procedural History ............................................................................... 1

Statement of Facts ................................................................................ 3

    A.   Pennsylvania's Paper-Based Absentee and
         Mail-In Ballot Program ..............................................................3

    B.   The AWIB Process .......................................................................5

    C.   Accessible Ballot Delivery and Marking Tools .........................6

    D.   Harm to Blind Voters Absent Entry of
         Permanent Injunctive Relief ......................................................8

Questions Involved ............................................................................... 9

Argument ............................................................................................. 9

    I.   Standard for Summary Judgment ................................................9

    II.   Defendants Violate the ADA and RA by Discriminating
         Against Blind Voters and Failing to Provide an
         Accessible Ballot Marking and Delivery Tool .........................10

         A.   Standard for Liability Under the ADA and RA ................10

         B.   Plaintiffs Are Qualified Individuals with Disabilities .......11

         C.   Defendants' Failure to Make Its Absentee and Mail-In
              Ballot Program Accessible to Blind Voters Constitutes
              Unlawful Discrimination Under the ADA and RA ...........12

1.   Congress Intended the ADA and RA to Combat
     a Broad Range of Discriminatory Actions .................................. 12

2.   Defendants Violate the ADA and RA by
     Unlawfully Denying Blind Voters Equal
     and Meaningful Access to Its Absentee
     and Mail-In Ballot Program ...................................................... 14

3.   Defendants Violate the ADA and RA by
     Failing to Make a Reasonable Modification
     — Implementing an Accessible Ballot Marking
     and Delivery Tool ...................................................................... 18

4.   Defendants Violate the ADA and RA by
     Failing to Ensure Effective Communication
     with Blind Voters ...................................................................... 19

III.  The Court Should Enter a Permanent Injunction
      Requiring Defendants to Implement a Comprehensive
      Remedial Plan ............................................................................. 21

Conclusion ............................................................................................. 25

# TABLE OF CITATIONS

## Cases

*Alexander v. Choate*,
    469 U.S. 287 (1985)..............................................................13, 18

*Alliance Bank v. New Century Bank*,
    742 F. Supp. 2d 532 (E.D. Pa. 2010)............................................22

*American Council of the Blind v. Paulson*,
    525 F.3d 1256 (D.C. Cir. 2008)....................................................16

*Berardelli v. Allied Services Inst. of Rehab. Med.*,
    900 F.3d 104 (3d Cir. 2018) ..................................................11, 12

*Bjorgung v. Whitetail Resort, LP*,
    550 F.3d 263 (3d Cir. 2008) .........................................................10

*California Council of the Blind v. County of Alameda*,
    985 F. Supp. 2d 1229 (N.D. Cal. 2013)........................................20

*Chaffin v. Kansas State Fair Bd.*,
    348 F.3d 850 (10th Cir. 2003) .....................................................13

*Disabled in Action v. Bd. of Elec.*,
    752 F.3d 189 (2d Cir. 2014) ...........................................15 ,18, 23

*Drenth v. Boockvar*,
    No. 1:20-CV-00829, 2020 WL 2745729 (M.D. Pa.
    May 27, 2020)..........................................................2, 5, 11, 17, 22

*Frederick L. v. Dep't of Public Welfare*,
    364 F.3d 487 (3d Cir. 2004) ..................................................13, 18

*Haberle v. Troxel*,
    885 F.3d 170 (3d Cir. 2018) .........................................................11

*Helen L. v. DiDario*
    46 F.3d 325 (3d Cir. 1995) ...........................................................13

*Nat'l Ass'n for Advancement of Colored People v. City of Philadelphia*,
    834 F.3d 435 (3d Cir. 2016) ..............................................................9

*Nat'l Fed'n of the Blind v. Lamone*,
    813 F.3d 494 (4th Cir. 2016) .....................................14, 15, 18, 19

*Nat'l Fed'n of the Blind v. Lamone*,
    No. RDB-14-1631, 2014 WL 4388342 (D. Md. Sept. 4,
    2014), *aff'd,* 813 F.3d 494 (4th Cir. 2016) ...............................22, 23

*Rite Aid of Pennsylvania, Inc. v. United Food and Commercial
Workers Union, Local 1776*,
    595 F.3d 128 (3d Cir. 2010) ..........................................................10

*Shields v. Zuccarini*,
    254 F.3d 476 (3d Cir. 2001) ..........................................................21

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
    402 U.S. 1 (1971)............................................................................23

## Statutes and Regulations

29 U.S.C. § 701(a)(5)...............................................................................12, 23

29 U.S.C. § 705(20) .......................................................................................11

29 U.S.C. § 794(a) .........................................................................................10

42 U.S.C. § 12101(3) .....................................................................................12

42 U.S.C. § 12101(5) ................................................................................13, 23

42 U.S.C. § 12102(1)(A)................................................................................11

42 U.S.C. § 12102(2)(A)................................................................................11

42 U.S.C. § 12131(1)(B)................................................................................10

42 U.S.C. § 12131(2) .....................................................................................11

42 U.S.C. § 12132 ................................................................................................10

42 U.S.C. § 12134(a) ..........................................................................................13

42 U.S.C. § 12134(b) ..........................................................................................13

42 U.S.C. § 12201(a) ..........................................................................................12

28 C.F.R. Pt. 35 ..................................................................................................13

28 C.F.R. § 35.108(d)(2)(iii)(B) .........................................................................11

28 C.F.R. § 35.130(b)(1)(ii)-(iii) ........................................................................14

28 C.F.R. § 35.130(b)(7)(a) ................................................................................18

28 C.F.R. § 35.160(a)(1) .....................................................................................20

28 C.F.R. § 35.160(b)(1) .....................................................................................20

28 C.F.R. § 35.160(b)(2) .....................................................................................20

28 C.F.R. Pt. 41 ..................................................................................................13

28 C.F.R. § 41.51(b)(1)(ii)-(iii) ..........................................................................14

71 P.S. § 61(a)....................................................................................................10

Fed. R. Civ. P. 56(a)..............................................................................................9

## **INTRODUCTION**

Plaintiffs, through their counsel, submit this Brief in support of their Motion for Partial Summary Judgment.  Sighted voters can vote privately and independently without going to their polling places by using Pennsylvania's absentee and mail-in ballot program.  Blind voters want the same opportunity to cast their ballots privately and independently without voting in person, but it is undisputed that Pennsylvania's paper-based absentee and mail-in ballot process is inaccessible to blind voters.  Defendants' Accessible Write-In Ballot process, implemented in the primary, likewise is not accessible to blind voters.  Accessible ballot marking and delivery tools are available and used in multiple states to enable blind voters to vote privately and independently.  Defendants' failure to implement such a tool discriminates against blind voters in violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA").

## **PROCEDURAL HISTORY**

Plaintiffs, Joseph Drenth and the National Federation of the Blind of Pennsylvania ("NFB-PA"), filed a Complaint (Doc. 1) on May 21, 2020 against Defendants Kathy Boockvar, Secretary of the Commonwealth, and the Pennsylvania Department of Statement (collectively, "DOS").  Plaintiffs alleged that Defendants violate the ADA and RA because their absentee and mail-in ballot program discriminates against blind voters by failing to afford them the

opportunity to vote by absentee or mail-in ballot that is equal to that afforded to voters who are not blind.

That same day, Plaintiffs filed a Motion for a Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction (Doc. 4), seeking interim relief that would afford blind voters better access (if not full access) to the absentee and mail-in ballot program for the June 2, 2020 primary election. Following a hearing, the Court entered a preliminary injunction. (Doc. 32). The Court ordered Defendants to use the Accessible Write-In Ballot ("AWIB") process for the June primary election even though it acknowledged that AWIB was not "entirely adequate to achieve compliance with the ADA and RA[.]" *Drenth v. Boockvar*, No. 1:20-CV-00829, 2020 WL 2745729, at *6 (M.D. Pa. May 27, 2020); Order ¶¶ 1-9 (May 27, 2020) (Doc. 32).

Plaintiffs now seek partial summary judgment. The undisputed facts establish that Defendants violate the ADA and RA by using paper ballots for absentee and mail-in voting and not implementing an accessible ballot delivery and marking tool to allow blind Pennsylvania voters to receive and mark their ballots privately and independently like sighted voters, thus discriminating against

Plaintiffs and denying them equal and meaningful access to Defendants' absentee and mail-in voting program.[1]

## STATEMENT OF FACTS

### A. Pennsylvania's Paper-Based Absentee and Mail-In Ballot Program

Pennsylvania allows all voters who do not want to or cannot vote at their polling places the opportunity to vote using mail-in or absentee ballots.  SMF ## 15-18.[2]  While some registered voters are eligible to vote by absentee ballot if they meet certain criteria (including inability to vote in person due to illness or disability), *all* registered voters – including those eligible to vote by absentee ballot – are now eligible to vote by mail-in ballot without offering any reason or excuse. *Id.* ## 16-18.

DOS's absentee and mail-in ballot program is entirely paper-based.  SMF # 20.  Pennsylvania voters who want to vote by mail-in or absentee ballot rather than in-person can apply online at a DOS-operated portal. *Id.* # 19.  Once a voter's County Board of Elections ("CBE") determine he or she is qualified to vote, the CBE sends the voter a package that includes: (a) the paper ballot; (b) the secrecy

---

[1]  Since there are disputed issues of material fact, Plaintiffs do not seek summary judgment on their claim that Defendants violate the ADA and RA with respect to how blind voters return their marked ballots.

[2]  References to "SMF" are to the Plaintiffs' Statement of Material Facts and the evidence cited therein, which is filed with this Brief.

envelope; and (c) the return envelope. *Id.* # 20. Upon receipt of that package, the voter must do the following to assure that his/her vote will be counted: (a) mark the ballot by hand; (b) place the marked ballot into the secrecy envelope and seal it; (c) place the secrecy envelope into the return envelope and seal it; (d) review the declaration on the exterior of the return envelope; (e) sign the declaration; and (f) deliver it to the CBE so it is received no later than 8:00 p.m. on election day. *Id.* # 21.

While sighted voters can review, mark, assemble, sign, and return their paper absentee and mail-in ballots privately and independently, blind voters cannot. SMF ## 22, 25-28. Blind voters do not want to, yet must, rely on sighted individuals to read the paper ballots to them; must tell sighted individuals which candidates they want to vote for; must rely on sighted individuals to accurately complete the ballots in accordance with their wishes; must rely on sighted individuals to place the ballot properly within the secrecy envelope and then within the return envelope; and must rely on sighted individuals to read the declaration to them and tell them where the declaration should be signed. *Id.* ## 25-28, 31. In short, as DOS *admits*, its paper absentee and mail-in ballot program is not accessible to blind voters because they cannot use it to vote privately and independently. *Id.* # 22-24.

4

## B.  <u>The AWIB Process</u>

The Court's preliminary injunction compelled DOS to use the AWIB

process for the June 2, 2020 primary.  SMF # 32.  However, it observed that it was

an "imperfect" remedy and, while it was better than no remedy at all, the Court

acknowledged that the AWIB process was "not entirely adequate to achieve

compliance with the ADA and RA." *Drenth*, 2020 WL 2745729, at *6.

DOS does not intend to use the AWIB process in any future elections.  SMF

# 84.  This is just as well because, as blind voters and Plaintiffs' expert confirm,

the AWIB process is marked by serious flaws that render it inaccessible to blind

voters, SMF ## 37, 39-55, 59-65, including:

- ▪ The AWIB process imposes a significant cognitive load on blind

  voters because it separates the candidate list from the fillable ballot, so

  that blind voters must switch back and forth among the documents.

  They must either: (1) review the candidate list, copy each choice, and

  paste it into the appropriate line on the fillable ballot, or (2) memorize

  the spelling of their choices on the candidate list and then type their

  names into the appropriate lines on the fillable ballot.  It is extremely

  confusing, taxing, time-consuming, and burdensome for blind voters –

  even those who are more technologically savvy – to repeatedly

5

navigate between two documents to make sure that they are accurately marking their ballots.  SMF ## 37, 39-40, 50, 53, 60-61, 64.

- The AWIB candidate lists were not formatted properly and had other technical problems, making it hard for the screen reader to correctly convey the information to voters and exacerbating the difficulty in using the AWIB process.  SMF ## 48-49, 62.

- The AWIB ballot, too, was difficult to use because of formatting issues and because the entries on the ballot did not always align with the candidate list.  SMF ## 51-52.

- DOS did not provide instructions on how to use the envelope file, sowing confusion, and, even when blind voters managed to print an envelope using the file, the print-out was distorted.  SMF # 54, 63, 65.

### C.  **Accessible Ballot Delivery and Marking Tools**

Accessible ballot marking and delivery tools electronically deliver accessible ballots to blind voters via email which can be read to them using their screen reader software (used by many blind people) and which they can mark on their computers privately and independently.  SMF ## 67, 71-72.  Unlike the paper absentee and mail-in ballot process, these tools allow blind voters to vote privately and independently without relying on sighted persons for assistance.  *Id.* ## 67, 73.  Unlike the AWIB process, these tools integrate into a single document the

6

candidate list and the means for the blind voters to designate their choices, eliminating the problem of cognitive overload.  *Id.* # 74-75.  For that reason, ballot delivery and marking tools are accessible for blind voters.  *Id.* # 67, 73-75.

It is feasible for DOS to implement an accessible ballot delivery and marking tool.  Such tools are available commercially and through open-source platforms.  SMF # 71.  A number of other states currently allow blind voters to vote using those tools.  *Id.* # 72.[3]

Most significantly, any argument that an accessible ballot marking and delivery tool is not feasible is undermined by the fact that DOS admits that it is working to implement an accessible ballot marking and delivery tool for blind voters in time for the November 2020 election.  SMF # 85.  DOS has the funding to implement this solution.  *Id.* ## 86-87.  And, DOS has concluded that it is able to sufficiently mitigate any potential security concerns related to use of such a tool.  *Id.* # 88.

Plaintiffs and other blind voters have been asking DOS to implement an accessible ballot marking and delivery tool for months.  SMF ## 69-70.  Yet, although such a tool is required by the ADA and RA to assure equal access to blind voters, DOS's promises remain unfulfilled.  *See id.* # 85.  As of today, DOS has no

---

[3]  This system would not even be all that unusual in Pennsylvania since DOS currently electronically delivers ballots via email to eligible voters under the Uniformed and Overseas Citizens and Absentee Voting Act.  SMF # 76.

accessible ballot marking and delivery tool, contrary to its obligations under the ADA and RA. *See id.*

## D. Harm to Blind Voters Absent Entry of Permanent Injunctive Relief

Plaintiff Drenth and NFB-PA members want the opportunity to participate in the democratic process by voting. SMF # 90. Plaintiff Drenth and NFB-PA members want the opportunity to have equal and meaningful access to all of DOS's voting programs, including the opportunity to vote privately and independently without going to their polling places to vote in person – just as sighted voters can – by using an accessible ballot marking and delivery tool. *Id.* ## 91-92.

Equal and meaningful access to Pennsylvania's absentee and mail-in voting program is particularly critical at this time due to the COVID-19 pandemic. *See* SMF ## 93, 102. Voting in person at polling places exposes voters to the risk of COVID-19 infection. *Id.* ## 97, 100. For some blind voters, such Plaintiff Drenth, the risk may be heightened due to underlying health issues. *See id.* # 101. DOS encouraged voters uncomfortable with in-person voting due to COVID-19 to use the absentee and mail-in voting program in the June 2020 primary. *Id.* ## 90, 98. More than half of all voters during the June 2020 primary took advantage of that option. *Id.* # 99. DOS expects to do the same for the November 2020 general election. *Id.* # 96.

Plaintiffs want the opportunity to vote privately and independently without traveling to their polling places in November 2020 in part due to the threat of COVID-19.  SMF # 102.  They do not want to choose between protecting their health and voting privately and independently.  *Id.* # 103.

## QUESTIONS INVOLVED

1.      Do Defendants violate the ADA and RA by failing to ensure that its absentee and mail-in ballot program is accessible to blind voters?

2.      Should a permanent injunction be granted to require Defendants to implement an accessible ballot marking and delivery tool for blind voters in time for the November 2020 election and a remedial plan to ensure that the tool meets the needs of blind voters, is operational for the November 2020 election, and actually enables blind voters to vote privately and independently?

## ARGUMENT

## I.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Nat'l Ass'n for Advancement of Colored People v. City of Philadelphia*, 834 F.3d 435, 440 (3d Cir. 2016).  Facts are "material" only if they might "affect the outcome of the case under governing law."  *Id.*  In assessing a summary judgment motion, the Court must view the facts in the light most

favorable to the nonmoving party.  *Rite Aid of Pennsylvania, Inc. v. United Food and Commercial Workers Union, Local 1776*, 595 F.3d 128, 131 (3d Cir. 2010).

However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 268 (3d Cir. 2008) (emphasis in original; citation omitted).

## II.  DEFENDANTS VIOLATE THE ADA AND RA BY FAILING TO PROVIDE AN ACCESSIBLE BALLOT MARKING AND DELIVERY TOOL FOR BLIND VOTERS.

### A.  Standard for Liability Under the ADA and RA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."  42 U.S.C. § 12132.  Section 504 of the RA similarly prohibits discrimination on the basis of disability by any program that receives federal financial assistance.  29 U.S.C. § 794(a).[4]  Liability under Title II of the ADA and Section 504 of the RA is

---

[4]  There is no genuine dispute that DOS, administered by Defendant Boockvar, is a department of the Commonwealth, *see* SMF # 8 (citing 71 P.S. § 61(a)), and thus a "public entity" subject to Title II of the ADA.  42 U.S.C. § 12131(1)(B).  Nor is there any genuine dispute that DOS is a recipient of federal financial assistance, SMF # 14, and thus required to comply with Section 504 of the RA.  29 U.S.C. § 794(a).

governed by the same substantive standard. *Berardelli v. Allied Services Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018); *Drenth*, 2020 WL 2745729, at *5.

To prevail on a claim under either Title II of the ADA or Section 504 of the RA, a plaintiff must establish that he: (1) has a disability; (2) is otherwise qualified to participate in the covered entity's services, programs, or activities; and (3) was excluded from participation in or denied the benefits of those services, programs, or activities or otherwise subject to discrimination by that entity. *Haberle v. Troxel*, 885 F.3d 170, 178 (3d Cir. 2018); *Drenth,* 2020 WL 2745729, at *5. There are no genuine disputes of material facts that these elements are satisfied.

## B.  Plaintiffs Are Qualified Individuals With Disabilities.

This Court has previously, and correctly, determined that Mr. Drenth and NFB-PA members who are blind are qualified individuals with disabilities who are protected by Title II of the ADA and Section 504 of the RA. *Drenth*, 2020 WL 2745729, at *5. Plaintiff Drenth and some NFB members are blind, SMF ## 2, 5, which substantially impairs the major life activity of seeing. *See* 42 U.S.C. §§ 12102(1)(A), 12102(2)(A); 28 C.F.R. § 35.108(d)(2)(iii)(B); 29 U.S.C. § 705(20). Mr. Drenth and NFB-PA members are registered to vote in Pennsylvania, SMF ## 3, 7, so they are "qualified" because they meet the essential eligibility requirements to participate in Pennsylvania's voting programs. *See* 42 U.S.C. § 12131(2).

11

**C.  Defendants' Failure to Make Its Absentee and
Mail-In Ballot Program Accessible to Blind Voters Constitutes
<u>Unlawful Discrimination Under the ADA and RA.</u>**

**1.  Congress Intended the ADA and RA to Combat
<u>a Broad Range of Discriminatory Actions.</u>**

The Rehabilitation Act of 1973 "'was the first broad federal statute aimed at eradicating discrimination against individuals with disabilities.'"  *Berardelli*, 900 F.3d at 114 (citation omitted).  Yet, "[a]fter nearly two decades experience with the statute Congress acknowledged that the RA had 'shortcomings and deficiencies' … that were impeding its effectiveness in eliminating disability discrimination."  *Id.* at 115 (citation omitted; ellipses added).  Thus, in 1990, Congress enacted the ADA "'as a clear and comprehensive national mandate designed to eliminate discrimination against individuals with physical and mental disabilities ….'"  *Id.* (citations omitted).  The ADA fits "hand in glove with the RA," but extends its reach beyond only federally funded programs to include, *inter alia,* all state and local governments and their programs.  *Id.*; *see also* 42 U.S.C. § 12201(a) (the protections of the RA are a floor for those established by the ADA).

In both the ADA and RA, Congress found that "discrimination against individuals with disabilities persists in such crucial areas as … voting …."  42 U.S.C. § 12101(3); 29 U.S.C. § 701(a)(5).  Congress further understood that disability discrimination does not encompass merely intentional discrimination motivated by animus, but also includes "the discriminatory effects of …

12

communication barriers, … failure to make modifications to existing facilities and practices, and … relegation to lesser services, programs, activities …." 42 U.S.C. § 12101(5).

Construing the ADA and RA, courts have thus acknowledged that covered entities must provide "meaningful access" to their programs and services. *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 857 (10th Cir. 2003). This encompasses not only elimination of discriminatory policies, practices, and procedures, but also the affirmative obligation to make reasonable modifications in programs and services unless doing so would result in a fundamental alteration. *Alexander*, 469 U.S. at 300-01 & n.20; *Frederick L. v. Dep't of Public Welfare*, 364 F.3d 487, 492-93 (3d Cir. 2004).

In Title II of the ADA, Congress directed the United States Department of Justice ("DOJ") to promulgate regulations to implement Title II of the ADA, 42 U.S.C. § 12134(a). Because Congress directed DOJ to ensure that the Title II regulations were consistent with specific RA regulations, 42 U.S.C. § 12134(b), the Third Circuit held that the Title II regulations have "the force of law" and courts are bound by those regulations. *Helen L. v. DiDario,* 46 F.3d 325, 332 (3d Cir. 1995). The Title II ADA regulations, like the RA regulations on which they are modeled, make clear that those statutes cover a broad range of discriminatory activities. *See* 28 C.F.R. Pts. 35, 41.

13

As discussed below, Defendants' actions and inactions indisputably contravene Title II of the ADA and Section 504 of the RA in multiple respects – they deny blind voters meaningful and equal access to their services, programs, and activities; they deny blind voters reasonable modifications to their programs, services, and activities; and they deny blind voters effective communication in the provision of their services, programs, and activities.[5]

### 2.  Defendants Violate the ADA and RA by Unlawfully Denying Blind Voters Equal and Meaningful Access to Its Absentee and Mail-In Ballot Program.

As discussed above, the ADA and RA are intended to ensure that individuals with disabilities have equal and meaningful access to covered entities' programs, services, and activities.  Specifically, the ADA and RA prohibit covered entities, like DOS, from: (1) affording people with disabilities an opportunity to participate in or benefit from services that is not equal to that afforded to others, and (2) providing people with disabilities with services that are not as effective in affording equal opportunity to obtain the same result as that provided to others.  28 C.F.R. §§ 35.130(b)(1)(ii)-(iii), 41.51(b)(1)(ii)-(iii).

---

[5]  The "program, service, or activity" at issue in this case is Defendants' absentee and mail-in ballot program which allows sighted – but not blind – voters the opportunity to vote privately and independently without voting in person.  *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503-04 (4th Cir. 2016) (in case presenting the identical issue, the court held the relevant program, service, or activity to be the state's absentee voting program, which was available to all voters) rather than all of the state's voting services.

It is beyond dispute – indeed, Defendants concede – that Pennsylvania's paper-based absentee and mail-in ballot program does not allow blind voters to vote privately and independently, as sighted voters can.  Completion of paper ballots requires voters with visual disabilities to have assistance – they must ask sighted individuals to read the ballot to them, to mark the ballot for them, to assemble the ballot for delivery, and to read the declaration to them and help them sign it.  In doing so, they must reveal their electoral choices to the sighted individuals who are helping them.  Thus, unlike sighted voters, blind voters are denied the opportunity to cast their votes privately and to vote independently.  In affording sighted voters the opportunity to vote privately and independently without voting in-person and not affording that same service to blind voters, Defendants do not afford blind voters the opportunity to participate equally and meaningfully in its programs or services in violation of the ADA and RA.[6]

In *Nat'l Fed'n of the Blind v. Lamone*, the Fourth Circuit held that Maryland officials violated Title II of the ADA and Section 504 of the RA by relying exclusively on paper ballots in its absentee ballot process (available to all registered

---

[6] It is not necessary for Plaintiffs to show that they were disenfranchised entirely or otherwise completely prevented from participating in Defendants' voting programs, services, and activities. It is sufficient to show that they were denied meaningful access, which includes the opportunity to vote privately and independently. *See Disabled in Action v. Bd. of Elec.*, 752 F.3d 189, 198-99 (2d Cir. 2014).

15

voters).  Affirming the district court's finding that blind voters cannot mark their

paper ballots without assistance, unlike voters without that disability, the court

determined that "[t]his sharp disparity makes obvious that defendants have

provided 'an aid, benefit, or service [to disabled individuals] that is not as effective

in affording equal opportunity to obtain the same result, to gain the same benefit,

or to reach the same level of achievement as that provided to others.'"  813 F.3d at

506 (citation omitted).  The court explained:

> Voting is a quintessential public activity.  In enacting the ADA,
> Congress explicitly found that "'individuals with disabilities …
> have been … relegated to a position of political powerlessness in
> our society, based on characteristics that are beyond the control
> of such individuals.'"  *Tennessee v. Lane*, 541 U.S. 509, 516, 124
> S.Ct. 1978, 158 L.Ed.2d 820 (2004) (quoting 42 U.S.C. §
> 12101(a)(7)).  Ensuring that disabled individuals are afforded an
> opportunity to participate in voting that is equal to that afforded
> others, 28 C.F.R. § 35.130, helps ensure that those individuals
> are never relegated to a position of political powerlessness.  *We*
> *affirm the district court's conclusion that by effectively requiring*
> *disabled individuals to rely on the assistance of others to vote*
> *absentee, defendants have not provided plaintiffs with meaning-*
> *ful access to Maryland's absentee voting program.*

*Id.* at 507 (emphasis added).  The law does not permit Defendants to require that

blind voters rely upon the kindness, availability, and accuracy of nondisabled third

parties to assist them to complete and submit their ballots.  *See American Council*

*of the Blind v. Paulson*, 525 F.3d 1256, 1264 (D.C. Cir. 2008) (noting that while

blind people used to have no choice but to "rely on the kindness of strangers" to

identify paper currency, "[i]t can no longer be successfully argued that a blind

person has meaningful access to currency if she cannot accurately identify paper

money without assistance.").

In holding that Plaintiffs were likely to succeed on the merits of their ADA

and RA claims, this Court wrote:

> Plaintiffs have … been denied the benefits of a public program –
> in this case the ability to vote privately and independently
> without being physically present at a polling location -- because
> of their disability.  Because Plaintiffs are blind, they are unable
> to complete a paper mail-in ballot or absentee ballot privately
> and independently.

*Drenth*, 2020 WL 2745729, at *5.  DOS's own admissions that its paper-based

absentee and mail-in ballot program is inaccessible preclude any challenge to the

validity of the Court's prior ruling.  *See* SMF ## 23-24.

Nor can Defendants rely on the AWIB process used in the primary election

to demonstrate that Plaintiffs have an equal and meaningful opportunity to vote.

This Court determined that the AWIB process was not "entirely adequate to

achieve compliance with the ADA and RA[.]"  *Drenth*, 2020 WL 2745729, at *6.

Defendants themselves have repudiated the AWIB process, explicitly stating that

they have no current intention of using it in any future elections.  As detailed,

*supra,* at 5-6, and in the Statement of Material Facts, blind voters struggled with

every step of the AWIB process – from completing the declaration to printing the

envelope.  SMF ## 37-66.  Most importantly, blind voters could not easily

complete the ballot because they had to switch back and forth from the candidate

17

list in order to type in their candidates' names or copy and paste them into the

ballot.  *Id.* ## 37, 39, 40, 50, 53, 60, 61, 64.  Even blind voters who are

technologically adept found the AWIB process frustrating.  *Id.* ## 45, 64-65.  Thus,

the AWIB process does not provide blind voters with equal and meaningful access

to Defendants' absentee and mail-in ballot program.

### 3.  Defendants Violate the ADA and RA by Failing to Make a Reasonable Modification – Implementing <u>an Accessible Ballot Marking and Delivery Tool.</u>

To assure meaningful access to covered entities' programs, services, and

activities, the ADA and RA require that they make "reasonable modifications" in

their policies, practices, or procedures when the modifications are necessary to

avoid discrimination on the basis of disability.  *See* 28 C.F.R. § 35.130(b)(7)(a);

*Alexander*, 485 U.S. at 300-01 & n.20; *Disabled in Action*, 752 F.3d at 197.  To

prevail on a reasonable modification claim, a plaintiff need only put forward a

proposed reasonable modification; the burden then shifts to the defendant to show

that providing the modification would impose a fundamental alteration.  *See*

*Frederick L.*, 364 F.3d at 492 n.4; *Nat'l Fed'n of the Blind v Lamone*, 813 F.3d at

507; *Disabled in Action*, 752 F.3d at 202.

Here, Plaintiffs have articulated a reasonable modification, *i.e.*, implementa-

tion of an accessible ballot marking and delivery tool.  This tool would enable

blind voters to read and mark their ballots privately and independently, just as

sighted voters do.  It is feasible for Defendants to implement such a tool in

Pennsylvania.  These tools are available commercially and through open-source

platforms and are used in multiple state and local jurisdictions.  DOS also has

funding to implement an accessible ballot marking and delivery tool.  Defendants

cannot seriously assert that implementing such a tool would fundamentally alter

their programs, services and activities; they concede that they are able to

sufficiently address potential security concerns and, most importantly, Defendants

have stated that they intend to purchase and implement such a tool.  SMF ## 85,

87, 88.

This Court should reach the same conclusion as the Fourth Circuit and hold

that implementation of a ballot marking tool is a reasonable modification for a state

to accommodate blind voters and doing so would not result in a fundamental

alteration.  *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d at 507-08.  As the court

explained: "[O]ur conclusions [that the state must provide a ballot marking tool as

a reasonable modification] simply flow from the basic promise of equality in

public services that animates the ADA."  *Id.* at 510.

### 4.  Defendants Violate the ADA and RA by Failing to Ensure Effective Communications with Blind Voters.

Defendants failure to implement an accessible ballot marking and delivery

tool for blind voters also violates the ADA's mandate that public entities "take

appropriate steps to ensure that communications with" participants with disabilities

19

"are as effective as communications with others."  28 C.F.R. § 35.160(a)(1).  This mandate may require public entities to furnish "appropriate auxiliary aids and services where necessary to afford individuals with disabilities … an equal opportunity to participate in and enjoy the benefits of" the entities' services, programs, or activities.  28 C.F.R. § 35.160(b)(1).  The public entity must give primary consideration to the individual's request when determining the type of auxiliary aid or service to use.  28 C.F.R. § 35.160(b)(2).  Moreover, auxiliary aids and services must be provided "in such a way as to *protect the privacy and independence* of the individual with a disability."  *Id.* (emphasis added).

In *California Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229 (N.D. Cal. 2013), the court held that the county's failure to provide audio technology to enable blind voters to use voting machines privately and independently violated the ADA, including the communication provisions, emphasizing that blind voters should not have to rely on third parties' assistance or be forced to reveal their private political opinions in order to vote.  *Id.* at 1238-41.  Quoting the ADA's legislative history, the court emphasized that Congress anticipated that the ADA would require covered entities to implement technological advances to maximize the independence of people with disabilities and their inclusion in society:

> "Indeed, the Committee intends that the types of
> accommodations and services provided to people with

20

> disabilities, under all titles of this bill, should keep pace with
> rapidly changing technology of the times."

*Id.* at 1240 (quoting H.R. Rep. 101-485(II), at 108 (1990), *reprinted in* 1990

U.S.C.C.A.N. 303, 391).

Here, Defendants' paper-based absentee and mail-in ballot program does not

provide effective communication for blind voters since they cannot privately and

independently use that system to vote.  An accessible ballot marking and delivery

tool is an auxiliary aid that blind voters want and that would protect their privacy

and independence in the vitally important act of voting.  Defendants' failure to

implement such a device thus violates the ADA's effective communication

mandate.

### III.  THE COURT SHOULD ENTER A PERMANENT INJUNCTION REQUIRING DEFENDANTS TO IMPLEMENT A COMPREHENSIVE REMEDIAL PLAN.

In determining whether to issue a permanent injunction, the Court must

consider whether:  (1) the moving party has succeeded on the merits; (2) the

moving party will be irreparably injured by denial of relief; (3) the entry of a

permanent injunction will result in even greater harm to the Defendants; and (4) an

injunction would be in the public interest.  *Shields v. Zuccarini*, 254 F.3d 476, 482

(3d Cir. 2001).  Plaintiffs established that Defendants have violated the ADA and

RA and, thus, have succeeded on the merits.  The other elements for permanent

injunctive relief are satisfied as well.

21

To establish irreparable harm, a party must demonstrate that the harm it will suffer is "'of a peculiar nature, so that compensation in money cannot atone for it.'" *Alliance Bank v. New Century Bank,* 742 F. Supp. 2d 532, 565 (E.D. Pa. 2010) (quoting *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994)). At the preliminary injunction stage, this Court found that, absent an interim remedy, Plaintiffs' would suffer irreparable harm by being "effectively forced to choose between forfeiting their right to vote privately and independently or risking their health and safety by traveling to a polling place to vote in person" and that "[s]uch a choice burdens" their First Amendment right to vote. *Drenth*, 2020 WL 2745729, at *5. "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* (quoting *Stilp v. Contino,* 613 F.3d 405, 409 (3d Cir. 2020)). The Court's conclusions and reasoning hold true at this stage. *See Nat'l Fed'n of the Blind v. Lamone*, No. RDB-14-1631, 2014 WL 4388342, at *15 (D. Md. Sept. 4, 2014) (granting permanent injunction in ADA and RA challenge to state's failure to implement accessible ballot marking tool), *aff'd,* 813 F.3d 494 (4th Cir. 2016).

The balance of equities also favors relief. Defendants state that they intend to purchase and implement an accessible ballot marking and delivery tool, so they cannot complain that it would be inequitable to hold them to their promise. *See Nat'l Fed'n of the Blind v. Lamone*, 2014 WL 4388342, at *15.

22

Finally, the public interest weighs in favor of the injunction. The public benefits when individuals can vote privately and independently. *Nat'l Fed'n of the Blind v. Lamone*, 2014 WL 4388342, at *15. Moreover, Congress intended the ADA and RA to address discrimination against people with disabilities in the area of voting. *See* 42 U.S.C. § 12101(a)(5); 29 U.S.C. § 701(a)(5).

The Court has broad equitable powers to fashion an appropriate remedy for Defendants' civil rights violations. *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971); *Disabled in Action*, 752 F.3d at 198. "Indeed, a district court has 'not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'" *Disabled in Action*, 752 F.3d at 198.

A comprehensive equitable remedy must ensure not merely that Defendants sign a contract to purchase an accessible ballot marking and delivery tool, but also ensures that it is actually implemented and works effectively. *Cf. Disabled in Action v. Bd. of Elec.*, 752 F.3d at 202-03 (upholding permanent injunction of remedial order requiring ongoing monitoring and reporting). To that end, Plaintiffs request that the Court permanently enjoin Defendants to provide blind voters with equal and meaningful access to its absentee and mail-in ballot program and specifically order that Defendants: (1) secure an accessible ballot delivery and marking tool for use beginning in the November 3, 2020 election; (2) use the

accessible ballot delivery and marking tool beginning with the November 3, 2020 general election; (3) publicize availability of the tool and how blind voters can request to use it; (4) cooperate with NFB-PA to test the accessible ballot delivery and marking tool prior to the November 2020 election; (5) monitor use of the accessible ballot delivery and marking tool in the November 2020 and in the 2021 primary and general elections to identify any problems, concerns, or complaints and timely address them; (6) issue status reports to Plaintiffs' counsel and the Court no later than September 30, 2020 and October 9, 2020 describing the status of the contract and efforts to operationalize it for use in the November 2020 election; and (7) issue status reports to Plaintiffs' counsel and the Court no later than four weeks after the November 2020 election and the primary and general elections in 2021 that identify the number of voters who requested to vote using the tool, who received ballots using the tool, and who cast ballots using the tool and that describe any complaints, problems, or concerns about the tool and how Defendants will address those going forward.[7]

---

[7]  While Plaintiffs seek an order pursuant to this Motion enjoining Defendants to immediately implement an accessible ballot marking and delivery tool, this will not foreclose Plaintiffs from seeking relief at trial to ensure that Defendants make further reasonable modifications concerning blind voters' returns of their ballots to provide them with equal and meaningful access to that aspect of the absentee and mail-in voting program.

## <u>CONCLUSION</u>

For all the reasons set forth above, Plaintiffs respectfully request that the Court enter partial summary judgment against Defendants on the claims that Defendants violated the ADA and RA by failing to provide blind voters with an accessible ballot delivery and marking tool and enter appropriate injunctive relief.

Respectfully submitted,

Dated:  July 22, 2020

By:  /s/ Kelly Darr
Disability Rights Pennsylvania
Kelly Darr (PA ID 80909)
Robin Resnick (PA ID 46980)
Laura Caravello (PA ID 312091)
Disability Rights Pennsylvania
1800 J.F. Kennedy Blvd., Suite 900
Philadelphia, PA  19103-7421
215-238-8070
215-772-3126 (fax)
kdarr@disabilityrightspa.org
rresnick@disabilityrightspa.org

By:  /s/ Kobie Flowers
Brown Goldstein Levy LLP
Kobie Flowers (MD 0106200084)
Sharon Krevor-Weisbaum
(MD 8712010337)
James Strawbridge (MD 1612140265)
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
410-962-1030
410-385-0869 (fax)
kflowers@browngold.com
skw@browngold.com
jstrawbridge@browngold.com

Counsel for Plaintiffs

## <u>LOCAL RULE 7.8(b) CERTIFICATION</u>

Pursuant to the Order dated July 7, 2020 (Doc. 44), the Court authorized the parties to submit briefs relating to summary judgment motions that exceed Local Rule 7.8's page and word limits so long as they do not exceed 25 pages, exclusive of cover pages, tables of contents and authorities, and certifications.  I certify that Plaintiffs' Brief in support of their Motion for Summary Judgment complies with the Court's Order.

Executed this 22nd day of July, 2020.


/s/ Robin Resnick
Robin Resnick

## **CERTIFICATE OF SERVICE**

I, Robin Resnick, hereby certify that Plaintiffs' Brief in Support of its

Motion for Summary Judgment was filed on July 22, 2020 with the Court's ECF

system and are available for viewing and downloading from the ECF system by the

following counsel who consented to electronic service:

Nicole J. Boland, Deputy Attorney General
Stephen Moniak, Senior Deputy Attorney General
Karen M. Roman, Chief Deputy Attorney General
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120

/s/ Robin Resnick
Robin Resnick