**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH DRENTH, *et al.*, | : | Civil No. 1:20-CV-00829 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

This is a civil rights case brought under the Americans with Disabilities Act

("ADA") and the Rehabilitation Act ("RA").  Plaintiffs, Joseph Drenth ("Drenth")

and the National Federation of the Blind of Pennsylvania ("NFB-PA"), assert that

the Commonwealth of Pennsylvania's election policies violate the rights of the

blind by not providing accessible ballots for blind individuals to vote privately and

independently from home.  Plaintiffs seek declaratory relief and a permanent

injunction requiring the Commonwealth to implement an accessible solution before

the November 3, 2020 general election.  The case is presently before the court on

Plaintiffs' motion for partial summary judgment and Defendants' motion for

summary judgment.

As the court has observed to the litigants and in a prior opinion, *see* Doc. 31,

this case addresses an important issue that required prompt resolution.  The court

commends Plaintiffs' advocacy and Defendants' responsiveness.  The court

appreciates the speed, skill, and professionalism of counsel in their development of

this case.  However, because Plaintiffs have obtained the relief that they originally

requested with respect to the November 2020 general election and all subsequent

elections, the court finds that Plaintiffs' claims arising from those elections are

now moot.  The court additionally finds that Defendants are entitled to summary

judgment in all other respects.  Accordingly, Defendants' motion is granted and

Plaintiffs' motion is denied.

## BACKGROUND AND PROCEDURAL HISTORY

Under current Pennsylvania election law, an eligible voter may vote without

being physically present at a polling location through the use of either an absentee

ballot or a mail-in ballot.  Act of Oct. 31, 2019, 2019 Pa. Laws 552.  Such voting is

accomplished through the completion of paper ballots that must be mailed to a

county board of election.  *Id.* §§ 3146.8; 3150.16.  The availability of absentee and

mail-in voting took on increased importance when the COVID-19 pandemic began

in Pennsylvania, and the Commonwealth accordingly encouraged voters to vote by

absentee and mail-in ballots. *Secretary of State Reminds Voters of New Mail-In*

*Voting Options Amid Coronavirus Concerns* (March 12, 2020), PA MEDIA,

https://www.media.pa.gov/ Pages/State-Details.aspx?newsid=374.

Plaintiffs in the present case filed suit on May 21, 2020, alleging that the

Commonwealth's mail-in ballot and absentee ballot policies violate the ADA and

the RA because they deprive blind Pennsylvanians of the right to vote privately

and independently by absentee or mail-in ballot.  (Doc. 1 ¶ 1.)  Given the risks

posed by the COVID-19 pandemic, Plaintiffs alleged that the Commonwealth's

policies placed blind individuals in an "impossible bind" of either forfeiting their

right to vote privately and independently or risking their health and safety by

traveling to a polling place to vote in person.  (*Id.* ¶ 7.)

To remedy this alleged violation, Plaintiffs sought preliminary injunctive

relief requiring the Commonwealth to implement a temporary solution in time for

the June 2, 2020 primary election; a permanent injunction requiring the

Commonwealth to implement a solution in time for the November 3, 2020 general

election and all subsequent elections; and a declaration that the Commonwealth's

absentee and mail-in ballot laws violated the ADA and the RA.  (*Id.* ¶¶ 117–19.)

Plaintiffs' request for a permanent injunction specifically sought implementation of

"a permanent solution, one that makes available an accessible online ballot tool so

that blind voters have equal access to vote independently and privately in all

elections through absentee or mail-in voting."  (*Id.* ¶ 9.)  Plaintiffs additionally

sought attorneys' fees, litigation expenses, and costs.  (*Id.* ¶ 120.)  Plaintiffs filed a

motion for preliminary injunction in connection with their complaint on May 21,

2020, seeking preliminary injunctive relief with regard to the June 2, 2020 primary

election.  (Doc. 4.)

Following an expedited briefing and argument schedule, the court granted Plaintiffs' motion for preliminary injunction on May 27, 2020, and required the Commonwealth to implement and make available to eligible blind voters the "Accessible Write-In Ballot" ("AWIB")—a remedy that the Commonwealth had proposed as a temporary solution that could feasibly be implemented in time for the primary. (Docs. 31–32.)  The court found that Plaintiffs were likely to succeed on the merits of their claims under the ADA and the RA because they had been denied the benefits of a public program due to a disability. (Doc. 31 at 12.)  The court additionally found that Plaintiffs would suffer irreparable injury if preliminary injunctive relief were denied and that the balancing of harms and public interest weighed in favor of preliminary injunctive relief. (*Id.* at 13–14.)

Given the court's finding that preliminary injunctive relief was appropriate, the court turned its attention to the appropriate remedies and focused on three possible solutions that had been proposed by the parties—the AWIB, the Uniformed and Overseas Citizens Absentee Voting Act ballot ("UOCAVA"), and the Federal Write-In Absentee Ballot ("FWAB"). (*See id.* at 15.)  The court concluded that none of the proposed remedies were "entirely adequate to achieve compliance with the ADA and the RA," but nonetheless ordered the Commonwealth to implement the AWIB in time for the primary election. (*Id.* at 15–16.)  The court found that the UOCAVA was the most adequate solution to

comply with the ADA and the RA, but found that implementation of that solution prior to the primary election was not feasible.  (*Id.* at 16.)  Accordingly, the court ordered implementation of the AWIB as the most adequate remedy that could feasibly be implemented in time for the primary.  (*Id.* at 16–17.)

Defendants complied with the court's order and implemented the AWIB in time for the primary election.  (*See* Doc. 49-1 ¶ 33; Doc. 57 ¶ 33.)  Defendants then answered the complaint on June 11, 2020, after which the court set an expedited case management schedule for the remainder of the case.  (Docs. 36, 39.) Following the close of fact discovery, the parties filed the instant motions for summary judgment on July 22, 2020.  (Docs. 48, 50.)  Briefing on those motions has concluded, and they are ripe for the court's resolution.  (Docs. 49, 53–55, 62– 63.)  The court granted Defendants' motion to supplement the summary judgment record on August 14, 2020.  (Doc. 74.)[1]

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

---

[1] Two motions in limine and a motion to reopen discovery are also pending before the court. (*See* Docs. 58, 77, 79.)

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.*  "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**UNDISPUTED MATERIAL FACTS**[2]

Plaintiff Drenth is a legally blind individual who is registered to vote in Pennsylvania.  (Doc. 49-1 ¶¶ 2–3; Doc. 57 ¶¶ 2–3.)  Plaintiff NFB-PA is a non-profit corporation that promotes the civil rights of blind individuals.  (Doc. 49-1 ¶¶ 4–6; Doc. 57 ¶¶ 4–6.)  The named Defendants are the Pennsylvania Department of State ("Department of State" or "the department")—which is responsible for overseeing some aspects of Pennsylvania's elections—and its secretary, Kathy Boockvar ("Boockvar").  (Doc. 49-1 ¶¶ 8–10; Doc. 57 ¶¶ 8–10.)  The Department of State receives federal financial assistance. (Doc. 49-1 ¶ 14; Doc. 57 ¶ 14.)

Although Pennsylvania law allows all eligible voters to vote through mail-in ballots once they properly apply to do so, use of the mail-in ballot system requires use of a paper ballot.  (Doc. 49-1 ¶¶ 16, 20; Doc. 57 ¶¶ 16, 20.)  Plaintiffs' request for permanent injunctive relief requests that the Commonwealth use accessible ballot marking and delivery tools in the November 2020 general election and in all subsequent elections.  (*See* Doc. 1 ¶ 9.)  Accessible ballot marking and delivery tools "electronically deliver ballots to blind voters and enable them to mark the ballots electronically using screen reader technology."  (Doc. 49-1 ¶ 67; Doc. 57 ¶

---

[2] The facts in this section are undisputed and, where applicable, are derived from the Plaintiffs' statement of material facts, *see* Doc. 49-1, the Defendants' statement of material facts, *see* Doc. 51, and the parties' respective answers to those statements, *see* Docs. 57, 54.

67.)  Plaintiffs requested implementation of this technology on several occasions before this litigation began.  (Doc. 49-1 ¶ 69; Doc. 57 ¶ 69.)

On August 12, 2020, the department finalized a contract for a remote ballot marking system with a private vendor, Democracy Live, Inc.  (Docs. 72-1, 72-2.) The department began the process of acquiring the remote ballot marking system well before litigation began in this case.  (Doc. 51 ¶ 3; Doc. 54 ¶ 3.)  The system will be in use for the November 2020 general election.  (Docs. 72-1, 72-2.)  The contract with Democracy Live is for an annual service period and provides for annual renewals.  (Doc. 63-1 ¶ 9.)

The remote ballot marking system purchased by the department is "a cloud-based platform that will allow county election officials to upload their ballot definition files exported from their county's election management software associated with the voting system in use in that county."  (*Id.* ¶ 10.)  Once the ballot definition files are uploaded by the county election officials, the remote ballot marking system will create an accessible ballot for the voter.  (*Id.*)  An eligible voter who applies for an accessible ballot will be able to access the ballot through a web link.  (*Id.*)  The voter will then be able to vote on the accessible ballot by marking his choices and will be able to use a variety of assistive technologies while doing so.  (*Id.* ¶¶ 11–12.)

The department has also resolved to issue guidance to county boards of elections in time for the November 2020 election that would instruct the boards to send a return envelope that is larger than the security envelope to voters voting through the remote ballot marking system and that would instruct counties to accept the return envelopes as long as the voter's signature appeared anywhere on the envelope.  (Doc. 51 ¶¶ 35–36; Doc. 54 ¶¶ 35–36.)

## THE PARTIES' SUMMARY JUDGMENT ARGUMENTS

As noted above, both parties have moved for summary judgment.  Plaintiffs' motion seeks a declaration that the Commonwealth's paper-based mail-in voting system violates the rights of blind voters by making it impossible for them to vote privately and independently.  (Doc. 49 at 20–24.)  Plaintiffs additionally argue that the Defendants' failure to implement an accessible ballot marking and delivery tool violates the ADA and the RA.  (*Id.* at 24–27.)  Plaintiffs seek injunctive relief in the form of a "comprehensive remedial plan" that would require Defendants to take the following actions:

> (1) secure an accessible ballot delivery and marking tool for use beginning in the November 3, 2020 election; (2) use the accessible ballot delivery and marking tool beginning with the November 3, 2020 general election; (3) publicize availability of the tool and how blind voters can request to use it; (4) cooperate with NFB-PA to test the accessible ballot delivery and marking tool prior to the November 2020 election; (5) monitor use of the accessible ballot delivery and marking tool in the November 2020 and in the 2021 primary and general elections to identify any problems, concerns, or complaints and timely

address them; (6) issue status reports to Plaintiffs' counsel and the
Court no later than September 30, 2020 and October 9, 2020 describing
the status of the contract and efforts to operationalize it for use in the
November 2020 election; and (7) issue status reports to Plaintiffs'
counsel and the Court no later than four weeks after the November 2020
election and the primary and general elections in 2021 that identify the
number of voters who requested to vote using the tool, who received
ballots using the tool, and who cast ballots using the tool and that
describe any complaints, problems, or concerns about the tool and how
Defendants will address those going forward.

(*Id.* at 27–30.)  Plaintiffs do not seek summary judgment as to the claim "that

Defendants violate the ADA and RA with respect to how blind voters return their

marked ballots" because, Plaintiffs assert, there are genuine issues of material fact

with respect to that claim.  (*Id.* at 9 n.1.)

Defendants argue that they are entitled to summary judgment because there

is no justiciable question before the court.[3]  Defendants argue that because a

remote ballot marking system will be in place for the November 2020 general

election and all future elections, there is no longer a case or controversy for the

court to resolve.  (Doc. 53 at 16–17.)  Defendants additionally argue that they are

entitled to summary judgment as to any claim arising from the return of ballots

both because Plaintiffs did not raise such a claim in their complaint and because

---

[3] Defendants raise essentially the same justiciability argument in their brief opposing the
Plaintiffs' motion for summary judgment.  In the interest of brevity, the court will not rehash that
argument here.

the current system for the return of ballots does not violate the ADA or the RA. (*Id.* at 17–28.)

Plaintiffs oppose Defendants' justiciability argument, arguing there is a case or controversy because there are a number of factual questions regarding the department's remote ballot marking system.[4]  (Doc. 55 at 8–11.)  Plaintiffs additionally argue that "there will remain open questions as to whether Plaintiffs have the access to which they are entitled under the ADA and RA" until the remote ballot marking system is actually implemented and used in elections.  (*Id.* at 18.) Finally, Plaintiffs argue that the implementation of a remote ballot marking system "will not address further modifications needed to the [ballot] return process."  (*Id.*) In addition to their justiciability arguments, Plaintiffs raise a number of arguments as to why the system for returning ballots violates the ADA and the RA.  (*Id.* at 19–30.)  Plaintiffs do not, however, address Defendants' argument that Plaintiffs did not raise any claim regarding the return of ballots in their complaint.  (*See generally id.*)

Defendants reiterated their justiciability argument in their reply brief.  (Doc. 63 at 14–19.)  Since that time, the department has finalized a contract for a remote

---

[4] These questions have since been answered by the Defendants' production of two supplemental declarations and the department's contract for the remote ballot marking system.  (*See* Docs. 63-1, 72-1, 72-2.)

ballot marking system with Democracy Live, and Defendants have provided two

supplemental declarations from Jonathan Marks, the department's Deputy

Secretary for Elections and Commissions, to supplement the factual record with

regard to their justiciability argument.  (*See* Docs. 63-1, 72-1, 72-2.)

**DISCUSSION**

### A. The Case Is Moot as it Pertains to the 2020 General Election and All Subsequent Elections

The court will first address Defendants' justiciability argument. Justiciability

of a case is enforced through several justiciability doctrines, including "standing,

ripeness, mootness, the political-question doctrine, and the prohibition on advisory

opinions."  *Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013) (quoting *Toll*

*Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)).

This case no longer presents a justiciable question with regard to the 2020

general election and all subsequent elections because Plaintiffs' claims with regard

to those elections are moot.  The doctrine of mootness asks "whether changes in

circumstances that prevailed at the beginning of the litigation have forestalled any

occasion for meaningful relief."  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596

(3d Cir. 2010).  "A case is moot when the issues presented are no longer 'live' or

the parties lack a legally cognizable interest in the outcome."  *Id.* (quoting

*Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d

13

Cir. 2003)).  Additionally, a party's claims become moot when the party obtains all the relief that it sought in litigation.  *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996); *see also, e.g.*, *In re Serrano-Vargas*, 776 F. App'x 74 (3d Cir. 2019) ("[B]ecause [the petitioner] has obtained the relief he requested, the mandamus petition will be dismissed as moot.").

In this case, Plaintiffs' complaint sought an injunction "prohibiting Defendants from violating the ADA and Section 504 and requiring Defendants to remedy their absentee and mail-in ballot system by implementing a remote accessible vote-by-mail system for Plaintiffs and those similarly situated for all future elections." (Doc. 1 ¶ 118.)  Since the complaint was filed, the department has finalized an agreement for a remote ballot marking system, which will be in place for the November 2020 general election.  (*See* Docs. 72-1, 72-2.)  Thus, Plaintiffs have obtained the relief that they sought in this litigation because Defendants are already implementing the requested vote-by-mail system.  As Defendants aptly summarized it, any injunctive relief ordered by the court would simply order Defendants "to do exactly what they are already doing." (Doc. 56 at 7.)  There is, therefore, no live case or controversy for the court to adjudicate, and this case is moot with respect to the 2020 general election and all subsequent elections.  *See Ehrheart*, 609 F.3d at 596; *Blanciak*, 77 F.3d at 698–99.

Plaintiffs' reliance on the voluntary cessation doctrine, *see* Doc. 55 at 17 n.3, does not alter the court's conclusion that Plaintiffs' claims are moot. The voluntary cessation doctrine is an exception to mootness. *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1246 n.6 (3d Cir. 1996). Under the doctrine, a case is not necessarily moot merely because of a defendant's voluntary choice to end an unlawful practice. *United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004). Rather, a defendant's voluntary cessation of allegedly unlawful conduct will only moot a case "if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)).

When reviewing a defendant's voluntary cessation of an allegedly unlawful activity, "the defendant's reason for changing its behavior is often probative of whether it is likely to change its behavior again." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020). Courts should be "skeptical" of a voluntary cessation that is done only "in the face of a court order." *Id.* (citing *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012)). "On the other hand, if the defendant ceases because of a new statute or a ruling in a completely different case, its argument for mootness is much stronger." *Id.* at 307 (citing *Lighthouse*

*Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007)).

The court finds that the voluntary cessation doctrine does not apply in this instance. To begin, it is not clear that the doctrine applies in a case such as this one where the voluntary cessation was initiated *before* litigation began. *See id.* at 306 (defining voluntary cessation as a defendant's argument that a case is moot "because of some action it took unilaterally *after* the litigation began" (emphasis added)). The record reflects that Defendants were in the process of securing a remote ballot marking system several months before suit was filed, and that they began the process shortly after the 2019 passage of a statute that allowed all Pennsylvania voters to vote remotely. (*See* Doc. 51 ¶ 3; Doc. 54 ¶ 3.) The record also shows that the department's purchase of a remote ballot marking system has been finalized and that the system will be implemented in time for the November election. (*See* Doc. 72-1.) On these facts, the court finds it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" and that the voluntary cessation doctrine therefore does not apply. *Fields*, 936 F.3d at 161.

Finally, although Plaintiffs argue that there will "remain open questions" as to the accessibility of the remote ballot marking system until the system has been used in an election, Doc. 55 at 18, such questions are not before the court.

Plaintiffs' complaint challenged the adequacy of the Commonwealth's paper-based mail-in voting system and sought implementation of a remote ballot marking system.  They have since obtained the requested relief.  Any challenges to the *adequacy* of the newly implemented remote ballot marking system have not been properly raised before this court and are not ripe for the court's resolution. Plaintiffs' request that the court require implementation of a "comprehensive remedial plan," *see* Doc. 49 ¶¶ 27–30, is similarly outside the scope of this litigation and will not be addressed here.

### B. Defendants Are Entitled to Summary Judgment as to Any Claim Relating to the Return of Ballots

At the summary judgment stage, Plaintiffs raise several arguments as to why the Commonwealth's current system for the return of mail-in ballots violates the rights of blind individuals.  (*See, e.g.*, Doc. 55 at 19–30; *see also* Doc. 49 at 9 n.1. (arguing that there are genuine issues of material fact as to whether return system violates the rights of blind individuals.))  The court finds that Defendants are entitled to summary judgment on that issue, however, because Plaintiffs did not raise any claim relating to the return, delivery, or submission of ballots in their complaint.  (*See* Doc. 1.)

The scope of a case is defined by the plaintiff's complaint.  *See State of Nebraska v. State of Wyoming*, 515 U.S. 1, 8 (1995) (noting that the scope of the

litigation "as envisioned under the initial pleadings" was the starting point for the

Court's analysis of motions to amend); *Johnson v. Wynn's Extended Care, Inc.*,

635 F. App'x 59, 60 ("Johnson's second amended complaint only pled violations

of the TCCWNA and the New Jersey Consumer Fraud Act, thus limiting the scope

of this case to potential violations of those two statutes."); *see also* 43A CORPUS

JURIS SECUNDUM *Injunctions* § 334 (Westlaw databased updated July 2020) ("The

issues properly determinable by the court are those presented by the pleadings, and

issues which are outside the scope of the case as presented by the pleadings

generally are not before the court for determination.").  Accordingly, a complaint

must give defendants "fair notice" of what claims a plaintiff is raising against the

defendants and the grounds upon which the claims rest.  *Carpenters Health v.*

*Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 384 (3d Cir. 2016) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)).

Here, Plaintiffs' complaint alleges that Pennsylvania's system of mail-in and

absentee voting discriminates against blind voters because it requires them to

complete a paper ballot; it does not allege that the system discriminates against

blind voters by requiring them to mail the ballots once they are complete or make

any other allegations regarding the return, delivery, or submission of ballots.  (*See*

Doc. 1.)  Accordingly, Defendants are entitled to summary judgment as to any

claim relating to the return of ballots because Plaintiffs' complaint did not raise such a claim.

### C. Plaintiffs Are Not Entitled to Relief with Respect to the 2020 Primary Election

Because Plaintiffs' claims regarding the 2020 general election and all subsequent elections are moot and because they did not properly plead a claim arising from the return of ballots, the only claim remaining for resolution is Plaintiffs' claim that Defendants' policies during the 2020 primary election violated the ADA and the RA.  In their complaint, Plaintiffs seek both injunctive and declaratory relief relating to the primary election.  Neither is appropriate at this juncture.

First, there is no basis for the court to issue an injunction regarding the 2020 primary election.  The primary election has already concluded, and past conduct "is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'"  *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 405 (M.D. Pa. 2019) (quoting *Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 159–60 (3d Cir. 2006)).  Here, as detailed above, any alleged violation of the ADA and the RA during the primary will not have any effect on future elections because a remote ballot marking system—which is a different system from the

19

AWIB voting system that was implemented prior to the 2020 primary election—
will be in place starting with the general election.

Second, declaratory relief regarding the primary election would be improper
because the conduct with respect to the primary is in the past.  Under the
Declaratory Judgment Act, a federal court has jurisdiction to grant declaratory
relief if it could exercise jurisdiction over a coercive judgment action regarding the
same facts and between the same parties.  *Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667, 671–74 (1950).  Declaratory relief, however, is inappropriate when
the allegedly unlawful conduct is entirely in the past.  *Green v. Mansour*, 474 U.S.
64, 73 (1985); *accord Ridge v. Campbell*, 984 F. Supp. 2d 364, 373 (M.D. Pa.
2013) (citing *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006)).
Accordingly, the court concludes that no relief is warranted based on the 2020
primary election.

Finally, even if declaratory relief could be granted for the Defendants' past
conduct, this court would likely decline to issue such declaratory relief.  A district
court has "broad discretion to decline to hear actions arising under the Declaratory
Judgment Act."  *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 225 (3d Cir.
2017) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)).  In a case
such as this one where any declaratory relief would raise concerns of judicial
restraint and comity, the court would take an extremely cautious approach.

20

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and Plaintiffs' motion for partial summary judgment is denied.[5]  Both parties' motions in limine and Plaintiffs' motion to reopen discovery are denied as moot.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: August 18, 2020

---

[5] As noted above, any challenges to the adequacy of the Commonwealth's newly implemented remote ballot marking system and any claims relating to the return of ballots were not raised before this court.  Accordingly, the court's disposition of the parties' motions shall not have any preclusive effect as to any future challenge to the adequacy of the Commonwealth's remote ballot marking system or as to any claim regarding the return of ballots.